STATE

*vs.*

INTOXICATING LIQUORS, VINO MEDICAL COMPANY, INC.
Claimant, Appellant.
(3 cases)

Androscoggin.        Opinion July 26, 1922.

*Chapter 235 of Public Laws of 1919, so far as it purports to incorporate by reference*
*into the section thereby amended, future enactments of Congress establishing*
*a rule, test, or definition of intoxicating liquors, and declaring such liquors*
*to be intoxicating within the meaning of Chap. 127 of the R. S.,*
*is invalid.    A question propounded to experts, which combines*
*two inquiries and calls for two opinions, is rightly excluded,*
*if either part of the question is not a proper subject of*
*expert inquiry.    Such questions must contain*
*an assumption of facts upon which the desired*
*opinion can be based.*

Under a constitution in which the legislative power is vested as provided in
the Constitution of Maine, such legislation constitutes an unlawful delega-
tion of legislative power, and an abdication by the representatives of the people
of their power, privilege and duty to enact laws.

Whether either inquiry in the following question propounded to an expert:
"In your judgment is it practicable for an ordinary person to commonly and
ordinarily drink Vino Tonic as a beverage and in such quantities as to pro-
duce intoxication?"—is within the field of expert testimony, quaere.    The
question, however, was rightly excluded; it did not contain any assumption
of facts upon which the desired opinion could be based; nor does the entire
record disclose a statement of facts as to the ingredients of the liquor in ques-
tion, except its alcoholic content, upon which an opinion of value could be
based.

That portion of the charge to which claimant excepted is unobjectionable.

On exceptions.    This is an action in which the Vino Medical
Company, Inc., of New York filed its claim for some 2,210 bottles
of "Vino Tonic" seized by the deputy sheriffs of Androscoggin County
as an intoxicating liquor, intended for unlawful sale.    The conten-
tion of the claimant was that the preparation so seized was not an

intoxicating liquor within the meaning of the statute. The State, on the other hand, contended that it was an intoxicating liquor within the meaning of that particular provision of the statute providing that "this enumeration shall not prevent any other pure or mixed liquors from being considered intoxicating." Claimant called two expert witnesses, and asked of each as an expert a question, both of which the presiding Justice excluded, and claimant excepted. Claimant excepted also to a part of the charge. Exceptions overruled. Judgment for the State. Liquor forfeited.

The case is fully stated in the opinion.

*Benjamin L. Berman*, County Attorney, for the State.

*George S. McCarty*, for claimant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

MORRILL, J. The facts are stated in the bill of exceptions, as follows:

"This was an action in which the Vino Medical Company, Inc. of New York, sought to have returned to it, as owner, some 2,210 bottles of "Vino Tonic," seized by the Deputy Sheriffs of Androscoggin County as intoxicating liquor intended for unlawful sale. "Vino Tonic," the alleged intoxicating liquor, contained 18.3% of alcohol, by volume, according to Mr. Andrews, a state witness. The amount of alcohol in the preparation was not seriously disputed. In addition to alcohol, an undetermined amount of cascara and aloes were among the remaining ingredients. The claimant contended that the preparation was not an intoxicating beverage under the law. Whether the preparation was an intoxicating beverage or not was practically the only question involved in the hearing."

An expert witness, called by the claimant, who had been a druggist since 1894, and was familiar with drugs, their preparation and their effects upon the human system, was asked the following question:

"In your judgment is it practicable for an ordinary person to commonly and ordinarily drink Vino Tonic as a beverage and in such quantities as to produce intoxication?" which question was excluded, and to the exclusion thereof exception was duly and seasonably taken.

. Another expert witness, called by the claimant, who had had experience in the analysis of preparations containing alcohol, was familiar by experiments with its effect upon the human system, and particularly familiar with the action upon the human system of cascara and aloes, was asked the following question:

·"With your familiarity with those experiments, your knowledge of the effects of alcohol, your knowledge of the drugs cascara and aloes, I will ask you, if, in your judgment, it is practicable for an ordinary person to commonly and ordinarily drink Vino Tonic as a beverage and in such quantities as to produce intoxication?" The question was excluded and to the exclusion thereof exception was duly and seasonably taken.

In his charge to the jury, the presiding Justice gave the following instruction:

"Here is the bare fact before you for consideration, the bare issue of fact. Under the rules of law that I have given you, was this, in fact, an intoxicating liquor, a liquor containing alcohol, or a sufficient quantity to produce intoxication, and if containing alcohol of the quantity stated, was it capable of being used for tippling purposes or as a beverage and was it also capable of being used for such purpose to the extent of producing intoxication? It is not a question of whether ordinary persons that are not drinking persons would find it an agreeable drink or would refuse to use it. It is a question whether any person who wanted to use it, wanted to use it for intoxication, was able to drink it, to use it as a beverage to the extent of intoxication." To this instruction the claimant seasonably excepted.

The entire charge is made a part of the bill of exceptions.

It is apparent that the questions propounded to the witnesses and excluded, and the instructions to which exceptions were taken, were not based upon Chap. 235 of the Public Laws of 1919, amending R. S., Chap. 127, Sec. 21. Prior to the passage of that amendment, the court had held that as to the liquors enumerated by name in Section 21, including cider when kept and deposited with intent to sell the same for tippling purposes or as a beverage, the actual intoxicating quality of the liquor is not an issuable fact. When it appears that a liquor comes within the scope of the forbidden enumeration, its intoxicating character becomes fixed by law and its non-intoxicating character, as a matter of fact, becomes entirely immaterial with

respect to the application of the statute. *State* v. *Frederickson,* 101 Maine, 37. As to other liquors containing alcohol, not within the enumeration, the intoxicating quality of the liquor is an issuable fact for the determination of a jury. *State* v. *Piche,* 98 Maine, 348.

But the amendment of 1919 changed the phraseology of Section 21, to read as follows:

"No person shall at any time, by himself, his clerk, servant or agent, directly or indirectly, sell any intoxicating liquors, of whatever origin; wine, ale, porter, strong beer, lager beer and all other malt liquors, and cider when kept or deposited with intent to sell the same for tippling purposes, or as a beverage, and all distilled spirits, as well as any beverage containing a percentage of alcohol, which by federal enactment, or by decision of the Supreme Court of the United States, now or hereafter declared, renders a beverage intoxicating, are declared intoxicating within the meaning of this chapter; but this enumeration shall not prevent any other pure or mixed liquors from being considered intoxicating."

This act was approved April 4, 1919. The eighteenth amendment to the Constitution of the United States had been proposed to the states by resolve of December 18, 1917, had been ratified by the legislature of this State, January 8, 1919, and its ratification by the requisite number of States had been proclaimed January 29, 1919.

On October 28, 1919, the Congress enacted the Volstead Act designed to provide effective enforcement of the 18th Amendment, and saw fit to adopt therein the following definition:

"When used in Title II and Title III of this Act the word 'liquor' of the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whiskey, rum, gin, beer, ale, porter and wine, and in addition thereto any spiritous, vinous, malt or fermented liquor, liquids and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one half of one per centum or more of alcohol by volume which are fit for use for beverage purposes."

It is thus clear that, if the amendment of 1919 is valid, the intoxicating quality of liquor not among those enumerated in R. S., Chap. 127, Sec. 21, but containing one half of one per centum or more of alcohol by volume, is immaterial as an issuable fact, (*Ruppert*

v. *Caffey,* 251 U. S., 264) and the exceptions must be overruled; upon such an hypothesis the only disputed issue of fact in the present case was whether the liquor in question was "fit for use for beverage purposes"; this question the presiding Justice fairly submitted to the jury.   True the presiding Justice included the element of the intoxicating quality of the liquor, which the jury found in favor of the State; but this part of the charge imposed an unwarranted burden upon the State, as to which the claimant cannot be heard to complain.   The questions propounded to the experts would likewise be objectionable and properly excluded; because each included the element of the intoxicating quality of the liquor.

The validity of Public Laws 1919, Chapter 235, although frequently challenged, has not been heretofore authoritatively declared, and Justices sitting at nisi prius have very properly instructed juries upon the assumption of its validity.   It now becomes necessary to consider the question with a view to an authoritative decision of that question.

It is clear upon reading the Act of 1919 that the legislature intended thereby to adopt, and incorporate into the statute law of the State, any definition of the term "intoxicating liquors," based upon the presence of a specified percentage of alcohol, then or thereafter declared by congressional enactment or by decision of the Supreme Court of the United States.   Whether it was intended that such definition should change from time to time, automatically, as the federal enactment might change, need not be decided.

We are not aware of any objection on constitutional grounds to the adoption, by legislative enactment, of any existing definition or standard enacted by Congress, by which the intoxicating character of liquor shall become fixed by law in this State.   *State* v. *Holland,* 117 Maine, 289.   But we have been unable to ascertain that such definition or standard had been declared prior to April 4, 1919, either by Congress or by the Supreme Court of the United States; the test of one half of one per cent. of alcohol by volume for intoxicating liquor was first enacted by Congress in the Volstead Act, which was passed over the President's veto on October 28, 1919, a statement in chronological order of the facts relating thereto will be found in *Ruppert* v. *Caffey,* supra.

The precise question presented for our decision, therefore, is whether the Act of April 4, 1919, so far as it purports to incorporate

by reference into the section thereby amended, future enactments of Congress establishing a rule, test or definition of intoxicating liquors, and declaring such liquors to be intoxicating within the meaning of Chap. 127 of the Revised Statutes, is valid.

We have no hesitation in answering the question in the negative. Under a constitution in which the legislative power is vested, as in the Constitution of Maine, "in two distinct branches, a House of Representatives, and a Senate, each to have a negative on the other and both to be styled the Legislature of Maine," subject to the reservations of the initiative and referendum amendment, such legislation constitutes an unlawful delegation of legislative power, and an abdication by the representatives of the people of their power, privilege and duty to enact laws. The authorities are so unanimous on the question that extended citation is unnecessary. Cooley's Const. Lim. 6 ed. p. 137. *Brodbine* v. *Revere*, 182 Mass. 600, and cases there cited. Opinion of the Justices. (Mass.) 133, N. E. 453.

It remains for us to consider the exceptions without reference to the amendment of 1919.

The exceptions to the exclusion of the questions propounded to the experts must be overruled. Both questions combined two inquiries and called for two opinions: Whether it was practicable for an ordinary person to commonly and ordinarily drink Vino Tonic as a beverage, and secondly, whether it was practicable to so drink it as to produce intoxication. If either part of the question is not a proper subject for expert testimony, the exclusion was right. It may well be doubted whether either inquiry was within the field of expert testimony. "The opinions of experts are not deemed admissible where the subject of the inquiry is one of general observation or experience, and not such as require any peculiar habits or study in order to qualify a man to understand it." *Pulsifer* v. *Berry*, 87 Maine, 405. In the case last cited the court quoted the following language from *Ferguson* v. *Hubbell*, 97 N. Y., 507; 49 Am. Rep., 544:

"It is not sufficient to warrant the introduction of expert evidence that the witness may know more of the subject of the inquiry, and may better comprehend and appreciate it than the jury; but to warrant its introduction the subject of the inquiry must be one relating to some trade, profession, science or art in which persons

instructed therein by study or experience, may be supposed to have more skill and knowledge than jurors of average intelligence may be presumed generally to have. The jurors may have less skill and experience than the witnesses and yet have enough to draw their own conclusions and do justice between the parties. Where the facts can be placed before a jury and they are of such a nature that jurors generally are just as competent to form opinions in reference to them and draw inferences from them as witnesses, then there is no occasion to resort to expert or opinion evidence."

This seems to us to be the true rule, and applying it to the questions here propounded, it is difficult to discover any substantial reason why the jury could not draw correct inferences on the subject matter from the testimony of witnesses testifying to facts as to the use of Vino Tonic, both as to its fitness for use as a beverage and its qualities to produce intoxication. See note to *Ferguson* v. *Hubbell* in 49 Am. Rep. 544.

But we do not deem it necessary to place our decision on that ground. The witnesses were not asked to testify as to facts; they were asked to give opinions as to Vino Tonic, without any apparent knowledge of its contents except the knowledge of Mr. Jordan as to its alcoholic content, referred to in the charge; the questions did not contain any assumption of facts. Indeed upon examination of the entire record there is no statement of facts as to the ingredients of this liquor, except its alcoholic content, upon which an opinion of value could be based. "In addition to alcohol, *an undetermined amount* of cascara and aloes were among the remaining ingredients." What those "remaining ingredients" were does not appear. "Cascara," from the Spanish, means bark; but whether the ingredient was cascara amarga (Honduras bark) or cascara sagrada, both of which are used in medicine, the record does not disclose. This court has said: "Concerning the form and scope of the hypothetical question and the extent and limitation of its assumption of facts and circumstances much must be left to the discretion of the presiding Justice. In framing a hypothetical question the practice is for the question to contain the assumption of the existence of such facts and conditions as the jury may be authorized to find upon the evidence as it then is, or as there may be good reason, to suppose it may thereafter appear to be." *Reid* v. *Steamship Co.*, 112 Maine, 34, 49. 3 Chamberlayne on Ev., Sec.

2461. We think that the rulings of the presiding Justice excluding the questions propounded were right.

In framing the third exception counsel has taken a portion of the charge consisting of four sentences and treated it as one instruction, to which he takes exceptions. In his brief he quotes the first part of that excerpt ending with the interrogation, and says that he has no fault to find with so much of the instruction quoted. The last two sentences he criticizes as not in harmony, in using the phrase "any person," with the rule laid down for the guidance of the jury in *Heintz* v. *Lepage,* 100 Maine, 545, and because "logically pursuing the court's instruction, it is not difficult to conclude that the intoxicating qualities of a questioned preparation are to be determined by the hazardous standard created by the misconduct of the most debauched and confirmed toper." We think that the passage is not fairly susceptible of such interpretation. In a charge occupying seven pages of the record the presiding Justice several times stated the issue in terms substantially identical with those which counsel now accepts as accurate. We do not think that the last two sentences declare any principle in conflict with the preceding sentences. The presiding Justice contrasted "ordinary persons who are not drinking persons" with "any person who wanted to use it, wanted to use it for intoxication." It seems to us hypercritical to say that the sentences criticized, taken in connection with the whole charge, could have misled the jury. It is men who want to use liquor, want to use it for intoxication, who commonly and ordinarily drink it as a beverage.

In each case the entry will be,

*Exceptions overruled.*
*Judgment for the State.*
*Liquor forfeited.*