## WAYNE M. WALLACE AND ANOTHER v. COMMISSIONER OF TAXATION.

184 N. W. (2d) 588.

January 29, 1971—No. 42321.

*Wayne M. Wallace,* pro se, for relators.

*Douglas M. Head,* Attorney General, and *Paul B. Saltzman,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Frank T. Gallagher, JJ.

MURPHY, JUSTICE.

Certiorari to review a decision of the Tax Court denying taxpayers certain allowances claimed in their 1966 joint state income tax return. Relators contend that the Tax Court was in error in denying the exclusion of sick pay from gross income (Minn. St. 1965, § 290.08, subd. 5) when such exemption is not permitted in arriving at Federal adjusted gross income. It is also contended that the Tax Court erred in denying a deduction for medical expense payments (Minn. St. 1967, § 290.09, subd. 10) for which relator Wayne M. Wallace was compensated by insurance.

According to the stipulated facts, the taxpayer was ill and absent from work for a period of 7 weeks. During most of this time he was hospitalized. Also, during this period, his employer continued to pay him a salary in excess of $100 a week. Payments for medical insurance premiums and payments to hospitals, physicians, and pharmacists for medical services furnished the taxpayer and his dependents during the taxable year totaled

$6,142.25. Of this amount $2,135.45 was paid by the taxpayer without any reimbursement by the medical insurer. The sum of $3,991.60 was paid by the insurer to hospitals and physicians pursuant to assignments by the taxpayer for medical services furnished him. In addition, $15.20 was paid by the insurer to a physician for medical services furnished a dependent of the taxpayer.

The commissioner of taxation denied the taxpayers' claim for exclusion of sick pay and deduction for the medical expenses paid by Wallace's insurer. This order was affirmed on appeal to the Tax Court.

■ We direct our attention to the claim that the commissioner erred in denying Wallace an exclusion of the sick pay received during the first 4 weeks of his illness in 1966 up to the amount of $400 from his Minnesota gross income. The taxpayers rely on Minn. St. 1965, § 290.08, subds. 1 and 5(a). Subd. 5(a) provides that amounts received as compensation by a sick or injured taxpayer may be excluded up to the amount of $100 a week.[1]

---

[1] Minn. St. 1965, § 290.08, so far as relevant here, provides:

"Subdivision 1. The following items shall not be included in gross income, provided that the amount of any item which was excluded in arriving at gross income under the provisions of section 290.01, subdivision 20, shall not be again excluded under this section.

\* \* \* \* \*

"Subd. 5(a). Amounts received as compensation for personal injuries or sickness by the injured or sick taxpayer, whether received under accident or health insurance contracts, workmen's compensation acts, any plan maintained by employers for such purpose, or by way of damages received in any suit or by agreement; provided, that any such amounts received as wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness shall be excluded from gross income to the extent that such amounts do not exceed a weekly rate of $100. In the case of a period during which the employee is absent from work on account of sickness, the preceding clause shall not apply to amounts attributable to the first seven calendar days in such period unless the employee is hospitalized on account of sickness for at least one day during such period."

Since the taxpayer was actually hospitalized for a period of at least 4 weeks, it would seem, under the plain wording of § 290.08, subd. 5(a), that he would be entitled to an exclusion of $400 of sick pay received from his employer.

The commissioner contends, however, that the exclusion must nevertheless be denied because the Federal statute governing the same subject requires exclusion of sick pay for the first 30 days of illness and the Internal Revenue Code must control because it has been made a part of our law by Minn. St. 290.01, subd. 20, which provides in part:

"The term 'gross income' in its application to individuals, estates and trusts means the adjusted gross income as computed for federal income tax purposes as defined in the laws of the United States for the taxable year with the modifications specified in this section."

The relevant provision of the Internal Revenue Code which the foregoing statute purports to incorporate by reference, is 26 USCA, § 105(d),[2] which provides:

"Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. The preceding sentence shall not apply to amounts attributable to the first 30 calendar days in such period, if such amounts are at a rate which exceeds 75 percent of the regular weekly rate of wages of the employee * * *."

We pass over the points raised by briefs and arguments with reference to the implied repeal of Minn. St. 1965, § 290.08, or whether Minn. St. 290.01, subd. 20, was intended as a complete revision of all statutes dealing with determination of individual gross income for tax purposes, and proceed directly to an exami-

---

[2] 68A Stat. 31, as amended by 78 Stat. 38.

nation of the effect and vitality of § 290.01, subd. 20, which purports to assimilate into Minnesota law the Internal Revenue Code provisions governing computation of adjusted gross income, including 26 USCA, § 105(d), relating to sick-pay exclusion for the tax year of 1966.

It should be noted that the term "adjusted gross income as computed for federal tax purposes," referred to in § 290.01, subd. 20, expresses an artificial concept created solely by Federal statute. Certain deductions or exclusions are permitted after arriving at Federal adjusted gross income. The term serves the purpose of simplifying certain individual tax returns by establishing a basis for or a limitation on allowable deductions or exclusions. The distinction between deductions allowed in arriving at adjusted gross income and those allowed thereafter is not precise. The amounts which are to be included or excluded in the determination of adjusted gross income are numerous and are subject to change. Many of the exclusions are based on political and social rather than economic considerations. The same political and social considerations which are of significance to the Federal tax policy are not necessarily of significance to the state's tax collection scheme. Federal provisions with respect to long-term capital gains exclusion, as well as depletion allowances, are continually the subject of controversy. Any and all of these provisions, as well as others, may be changed at any time by the Congress of the United States—without consulting the Minnesota Legislature.

One of the items which Congress changed without consulting either the Minnesota Legislature or the commissioner of taxation is the provision here in issue with respect to sick-pay exclusion. In 1961, when the Federal adjusted gross income concept was included in the Minnesota statutes, the wording of the Federal counterpart (26 USCA, § 105[d]) was, in substance, the same as the wording of Minn. St. 1965, § 290.08, subd. 5(a). In 1964, the Federal statute was changed to require the 30-day waiting period. The commissioner contends that, by this act, Congress,

in effect, amended the state law with reference to sick-pay exemption. The taxpayers contend that the 1964 amendment could not validly deprive them of the benefits of the provisions of § 290.08, subds. 1 and 5(a).

In considering the issue of whether a change in Federal law may alter the force and effect of provisions in a prior state law governing the same subject, it may be said that the principle which controls is that a state legislature may not delegate its legislative powers to any outside agency, including the Congress of the United States. The reason for this rule is that changes in the foreign legislation may not fit the policy of the incorporating legislature and the person subjected to the changed law would be denied the benefit of the considered judgment of his legislature on the matter. The basic objection derives from the principle that laws should be made by elected representatives of the people responsible to the electorate for their acts. That principle is expressed in Minn. Const. art. 9, § 1, which states in part: "The power of taxation shall never be surrendered, suspended or contracted away." See, 16 Am. Jur. (2d) Constitutional Law, § 245; Annotations, 133 A. L. R. 401; 79 L. ed. 474, 504; 166 A. L. R. 516, 518, 42 A. L. R. (2d) 797.

In support of his claim that the state may delegate such authority, the commissioner cites Featherstone v. Norman, 170 Ga. 370, 153 S. E. 58, and Alaska SS. Co. v. Mullaney, 12 Alaska 33, 84 F. Supp. 561. We cannot agree that either of these cases supports the commissioner in the case before us. As a matter of fact, the controlling languge in Featherstone expresses the basis for our holding. That decision states (170 Ga. 394, 153 S. E. 70):

"* * * The mere adoption of the method fixed by the Federal law is not vesting in Congress the power to create the State's method. It adopts existing exemptions and an existing method in determining in part the net taxable income of the taxpayer. Adoption of existing exemptions and an existing method is not a delegation to Congress of the legislative power of the State.

* * * This act in no way undertakes to make future Federal legislation a part of the law of this State upon that subject. * * * The subsequent amendment or repeal of the adopted statute or any part thereof has no effect upon the adopting statute."

The Alaska Steamship case may be distinguished for the reason that the court could there reconcile future legislative enactments made within the same Federal system; namely, acts of the Congress vis-a-vis acts of a territorial legislature.

Various state courts dealing with subjects aside from taxation have refused to give binding effect to state statutes attempting to incorporate future Federal legislation. In Hutchins v. Mayo, 143 Fla. 707, 197 So. 495, the Florida Supreme Court held invalid a statute regulating the citrus fruit industry, which provided that gradings should be according to standards established by a state commission or, at the option of the shipper, according to the standards "as now fixed by the United States Department of Agriculture, or as such standards may hereinafter be modified or changed." 143 Fla. 712, 197 So. 497. Likewise, the Arkansas Supreme Court held invalid a statute requiring payment of minimum prevailing wages upon public construction projects as "determined by the Secretary of Labor of the United States." Crowly v. Thornbrough, 226 Ark. 768, 771, 294 S. W. (2d) 62, 65. Among other authorities of similar import are State v. Vino Medical Co. 121 Maine 438, 117 A. 588; Holgate Bros. Co. v. Bashore, 331 Pa. 255, 200 A. 672; Smithberger v. Banning, 129 Neb. 651, 262 N. W. 492; In re Opinion of The Justices, 239 Mass. 606, 133 N. E. 453; City of Boston v. City of Chelsea, 212 Mass. 127, 98 N. E. 620.

The Illinois Legislature adopted a statute providing that terms used therein and in the 1954 Internal Revenue Code and other statutes relating to Federal income taxes should have the meaning given them in the Federal laws "as such Code and statutes are in effect on the date of enactment of this Act." § 102

of the Illinois Income Tax Act (Laws of Illinois 1969, P. A. 76-261). This provision was upheld because it did not attempt to incorporate Federal legislation in futuro. Thorpe v. Mahin, 43 Ill. (2d) 36, 250 N. E. (2d) 633. It appears that some states, in the interest of uniformity and simplification, have felt that it was desirable to conform state income tax laws with Federal laws on the same subject and have done so by constitutional amendment. Such an amendment was upheld in Anderson v. Tiemann, 182 Neb. 393, 155 N. W. (2d) 322. See, also, N. Y. Const. art. 3, § 22; Colorado Const. art. 10, § 19.

It may be observed that there is a category of cases holding that state statutes may incorporate Federal legislation in futuro, but these authorities deal with statutes which are auxiliary in nature and seek to achieve uniformity in implementation of national programs and policies. For instance, in In re Lasswell, 1 Cal. App. (2d) 183, 36 P. (2d) 678, the court upheld a state statute which in effect adopted the National Industrial Recovery Act and provided that when Federal authorities fixed a code for the operation of any interstate industry, that code automatically became the state code therefor. The court reasoned that the interrelation of state and interstate industrial and unemployment emergencies justified uniformity of code provisions. See, also, People ex rel. Pratt v. Goldfogle, 242 N. Y. 277, 151 N. E. 452; Commonwealth v. Alderman, 275 Pa. 483, 119 A. 551.

■ We must accordingly hold that the effect of Minn. St. 290.01, subd. 20, was to adopt the Federal law by reference as it existed at the time that statute was adopted. The legislature did not, or could not, grant to Congress the right to make future modifications or changes in Minnesota law. The statute adopted the provisions of the Federal code with respect to sick pay which were in force at the time § 290.01, subd. 20, was enacted in 1961. The 1964 amendment of 26 USCA, § 105(d), is without force and effect upon Minnesota law, and taxpayers are consequently entitled to the benefits clearly expressed in Minn. St. 1965, § 290.08, subds. 1 and 5(a).

 We next direct our attention to the claimed error of the commissioner in denying the taxpayers deductions for medical expenses. It is admitted that Wallace incurred $6,142.25 for medical services during the taxable year of 1966. It is agreed that the taxpayers are entitled to deduct the $2,135.45 which he paid out of his own pocket, but the commissioner contends that they are not entitled to deduct the $3,991.60 paid by Wallace's insurance company.

In support of their claim that they are entitled to this medical deduction, the taxpayers cite Minn. St. 1967, § 290.09, subd. 10, which provides in part:

"Payments for expenses for hospital, nursing, medical, surgical, dental, and other healing services, including institutional care and treatment for the mentally ill and physically handicapped, and for medical supplies and ambulance hire, incurred by the taxpayer on account of sickness, mental illness, physical handicap or personal injury to himself or his dependents and premiums paid for hospitalization and medical insurance including non-profit hospital service and non-profit medical service plans." [3]

While it would appear clear from the provisions of § 290.09, subd. 10, that the taxpayers should be entitled to a full deduction for the medical expenses incurred by Wallace, the commissioner again argues that this statute does not mean what it says. He argues that the legislature never intended that a taxpayer should be entitled to a windfall by deducting an expense for which he had been reimbursed by insurance, that the deductions provided for by § 290.09, subd. 10, are premised on the "ability-to-pay" philosophy, and that we should insinuate into § 290.09, subd. 10,

---

[3] In addition to the foregoing, it may be again noted that Minn. St. 290.08, subd. 5(a), with reference to exemptions, provides that "[a]mounts received as compensation for personal injuries or sickness by the injured or sick taxpayer, whether received under accident or health insurance contracts," subject to § 290.01, subd. 20, shall not be included in gross income.

the same language employed in 26 USCA, § 213.[4] The answer to this argument is that the Minnesota law in effect for 1966 did not limit the deduction to expenses uncompensated by insurance. This issue could not arise under the Federal statute because § 213(a) is specifically limited to medical expenses "not compensated for by insurance or otherwise," a limitation not included in § 290.09, subd. 10. Here, again, the commissioner takes the position that the Internal Revenue Code provisions relating to medical expense are controlling. He concedes that the express limitation is not found in the Minnesota statute but contends that the omission may be explained as a legislative oversight. We must reject this argument on the well-established ground that courts cannot supply that which the legislature purposely omits or inadvertently overlooks. Cf. Martinco v. Hastings, 265 Minn. 490, 122 N. W. (2d) 631; State v. Moseng, 254 Minn. 263, 95 N. W. (2d) 6.

■ The commissioner further points to language found in § 290.09, subd. 10, which refers to medical expenses "incurred by the taxpayer" on account of sickness or injuries, and argues that it cannot be said that the $3,991.60 paid by the insurer was an expense within the meaning of the statute since it was not "incurred" by him. We are not persuaded by this argument. It seems obvious to us that the taxpayer was personally liable for the full amount of the hospital and doctor bills incurred because of his sickness. The fact that the creditors were paid pursuant to an assignment furnished by the taxpayer does not mean that those expenses were not incurred by him. The situation is precisely the same as if the taxpayer had sold an asset and used the proceeds to pay a debt. In considering an analogous claim in Douglas v. Willcuts, 296 U. S. 1, 9, 56 S. Ct. 59, 62, 80 L. ed. 3, 8, the United States Supreme Court said:

"* * * We have held that income was received by a taxpayer, when, pursuant to a contract, a debt or other obligation was dis-

---

[4] 68A Stat. 69, as amended.

charged by another for his benefit. The transaction was regarded as being the same in substance as if the money had been paid to the taxpayer and he had transmitted it to his creditor."

■ The commissioner further argues that the limitation with reference to insurance has been incorporated into state law by Minnesota Income Tax Regulation 2008 (5), which states in part:

"If the taxpayer is reimbursed for expenses of sickness or injury during the same taxable year in which such expenses were paid, he can deduct under M.S.A. 290.09, Subd. 10 (deductions for expenses of sickness and injury) only the amount of such expenses which was not reimbursed."

While it is true, as the commissioner argues, that he has been given authority to enact regulations with reference to the administration of income tax laws (Minn. St. 15.0412 and 15.0413), he is mistaken in his assumption that the substance of Regulation 2008 (5) is within the scope of his power to regulate. It is well established that the legislature may confer discretion on the commissioner in the execution or adminstration of the law. It may not give him authority to determine what the law shall be or to supply a substantive provision of the law which he thinks the legislature should have included in the first place. 3B Dunnell, Dig. (3 ed.) § 1600; 1 Am. Jur. (2d) Administrative Law, §§ 101, 105, 107; 2 Am. Jur. (2d) Administrative Law, §§ 289, 300, 301; Welsand v. Railroad & Warehouse Comm. 251 Minn. 504, 88 N. W. (2d) 834; Dumont v. Commr. of Taxation, 278 Minn. 312, 154 N. W. (2d) 196; State ex rel. Brown v. Johnson, 255 Minn. 134, 96 N. W. (2d) 9; Lee v. Delmont, 228 Minn. 101, 36 N. W. (2d) 530.

■ We accordingly hold that Regulation 2008 (5) was without force and effect and is merely an expression of the commissioner's views as to what the law should be. In 1969, the legislature supplied the desired change by an amendment to § 290.09, subd. 10, which limits the deduction to medical expenses "not

compensated for by insurance or otherwise." L. 1969, c. 575, § 3. The issue presented here could not arise after the 1969 amendment. The amendment not only indicates a legislative awareness of the deficiency which the commissioner has attempted to cope with but also indicates an unwillingness to rely on the commissioner's Regulation 2008 (5).

Our holdings herein expressed render unnecessary a discussion of the other points raised by the parties.

Reversed.