MINNESOTA RECIPIENTS ALLIANCE, et al., Plaintiffs,

v.

Arthur E. NOOT, et al., Defendants and Third Party Plaintiffs,

v.

Richard D. SCHWEIKER, et al., Third Party Defendants.

No. 81–1031.

Supreme Court of Minnesota.

Dec. 17, 1981.

Michael Fargione, Legal Aid Society, Minneapolis, for plaintiffs.

Warren Spannaus, Atty. Gen., and Beverly Jones Heydinger, Sp. Asst., St. Paul, for Noot et al.

Mary Egan, Asst. U.S. Atty., Minneapolis, for Schweiker et al.

SIMONETT, Justice.

On August 13, 1981, Congress passed the Omnibus Budget Reconciliation Act of 1981, P. L. 97–35, 95 Stat. 843. Title XXIII, Subtitle A, Section 2301, lowered AFDC payments to working parents by lowering the amount of income that would be disregarded in the calculation of family need. These new requirements were effective on October 1, 1981, with the exception that any provisions of the Act in conflict with state law are not to be effective until the first month after the close of the state's next legislative session.[1]

Plaintiffs, Minnesota Recipients Alliance and others, a coalition of welfare recipients, brought an action in state court to enjoin the defendants, Arthur Noot, Commissioner of Public Welfare, and the Minnesota Department of Public Welfare (DPW), from implementing their new regulations in conformance with the Reconciliation Act on the grounds that state law is inconsistent with the federal amendments. The action was removed to federal district court. The federal district court, Judge Miles Lord presiding, granted a temporary injunction[2] (affirmed by the Eighth Circuit) and now certifies to us three questions.

In calculating aid payments under Aid to Families with Dependent Children (AFDC), the state determines the monthly established need. Income received by the recipient from outside sources, such as wages of a working mother are then deducted from the established need figure, and the result is

1. Section 2321(b) provides:
    (b) If a State agency administering a plan approved under part A of title IV of the Social Security Act demonstrates, to the satisfaction of the Secretary of Health and Human Services, that it cannot, by reason of State law, comply with the requirements of an amendment made by this chapter to which the effective date specified in subsection (a) applies, the Secretary may prescribe that, in the case of such State, the amendment will become effective beginning with the first month beginning after the close of the first session of such State's legislature ending on or after October 1, 1981. For purposes of the preceding sentence, the term "session of a State's legislature" includes any regular, special, budget, or other session of a State legislature.

2. The federal court's preliminary injunction, issued in October 1981, by its terms, remains "in effect until the month following the formal close of the next session of the Minnesota Legislature, unless otherwise modified by the court."

paid the recipient. The less income available to the parent, the larger the AFDC payment.

Prior to October 1981 income of working mothers was reduced by deducting certain items called "disregards." These disregards fell into two categories: "work expense disregards," which included such items as income taxes, union dues, allowance for travel and meals, and child care costs; and a "work incentive disregard," consisting of the disregard of the "first $30 of the total of such earned income for such month plus one-third of the remainder." 42 U.S.C. § 602(a)(8)(A)(ii) (1976). Only the income available to the mother after these "disregards" were deducted was used to reduce the size of the AFDC payment.

The Reconciliation Act changes these "disregards." Under the recent federal amendments, "work expense disregards" are limited to $160 a month for child care and $75 for all other expenses, including taxes. This change alone may reduce the working mother's AFDC grant by several hundred dollars. The second change made by the Reconciliation Act requires that the "$30 plus one-third" work incentive disregard be deducted from "net" rather than "gross" income, *i.e.*, to be taken after the work expense disregards have been made rather than before.

With this brief background, we now consider the three certified questions.

## I.

*First Question*: Minn. Stat. § 256.73, subd. 6 (1980), reads in part: "All net earned or unearned income not specifically disregarded by the social security act, the code of federal regulations, a state law, rules and regulations, shall be income applicable to the budgetary needs of the family."

> 1. Is this statute consistent with a policy under which deductions for work expenses are limited to $160 per child for child care and to $75 for all other work expenses (regardless of the actual amount of work expenses) in the calculation of AFDC benefits?

■ We answer this question "yes." We find no inconsistency in the language of section 256.73, subd. 6, with the new disregard formulas of the federal Reconciliation Act.

While this statute clearly incorporates into Minnesota's program all "work expense disregards" established by federal as well as state regulations, plaintiffs argue that the state statute must be construed according to federal regulations as they read when the statute was enacted in 1977. At that time all actual work expenses were taken into account before income was deducted from calculations of family need.

Plaintiffs argue that we should follow the holding of *Wallace v. Commissioner of Taxation*, 289 Minn. 220, 184 N.W.2d 588 (1971), that a state statute parallel to federal law should be construed as the parallel law read *at that time* and not as it may have been amended subsequently:

> In considering the issue of whether a change in Federal law may alter the force and effect of provisions in a prior state law governing the same subject, it may be said that the principle which controls is that a state legislature may not delegate its legislative powers to any outside agency, including the Congress of the United States.

*Id.*, 289 Minn. at 226, 184 N.W.2d at 591. Accordingly, this court in *Wallace* followed its own state taxation statute even after a parallel federal statute was amended.

There are two major flaws with plaintiffs' analysis. First, *Wallace* itself contains an exception to the general nondelegable principle. Second and even more damaging to the welfare recipients is that the question of subsequent amendments is directly addressed in Minnesota law by Chapter 645, on the interpretation of statutes.

*Wallace* acknowledges that state statutes which are "auxiliary in nature and seek to achieve uniformity in implementation of national programs and policies" *may* incorporate federal legislation "in futuro." *Id.*, 289 Minn. at 228, 184 N.W.2d at 592. The

reasoning behind this exception is that where a state law exists solely pursuant to a national program and where national uniformity is needed, subsequent federal amendments should be binding on the states. While AFDC is a mixed federal and state program, funded and administered cooperatively with certain differences among the various states, eligibility requirements and basic program rules have always been handled by Washington. This is clear from the reference to federal regulations in section 256.73, subd. 6.

Yet even if the application of *Wallace* could not be resolved, the clear language of Minn.Stat. § 645.31, subd. 2 (1980), is dispositive:

> When an act adopts the provisions of another law by reference it also adopts by reference any subsequent amendments of such other law, except where there is clear legislative intention to the contrary.

The result of this analysis is consistent with other considerations. It would be unworkable and illogical to lock the state's AFDC program into federal regulations dating, in some cases, back to 1937. Moreover, the general rules on statutory interpretation require a consideration of the statute's occasion and necessity. Minn.Stat. § 645.16 (1980). As a cooperative state-federal program, it is appropriate that when the state law incorporates federal regulations, it brings with that incorporation subsequent changes in the federal regulations. *See* Minn.Stat. § 256.01, subd. 2(5) (1980). Indeed, failure to implement federal changes may jeopardize the state's receipt of federal funds.

The Minnesota Legislature could, of course, have chosen to write the statute without reference to the federal law but, in this instance, apparently having in mind the cooperative nature of the AFDC program, it chose not to do so.

## II.

*Second Question*: Minn.Stat. § 256.74, subd. 1 (1980), states in part: "[T]he amount which shall be granted to or on behalf of any dependent child and mother

* * * shall be determined by the county agency with due regard to the resources and necessary expenditures of the family * * * and shall be sufficient, when added to all other income and support available to the child, to provide such child with a reasonable subsistence compatible with decency and health."

> 1. Does this statute require the Department of Public Welfare to deduct all reasonable actual work expenses incurred by a family to produce income or may it limit work expenses to $160 for child care and to $75 for all other work expenses even if child care expenses and other work expenses exceed these limits?

■ Our answer to this question is that section 256.74, subd. 1, is in conflict with the new federal rule placing limitations of $160 a month for child care and $75 for other work expenses.

Minnesota, for its part in the federal-state cooperative venture to assist dependent children, has mandated under section 256.74, subd. 1, that aid sufficient to provide reasonable subsistence *shall* be granted. Reasonable subsistence is established need less "other income and support available" with "due regard" given to the family's own resources and expenditures. Minn. Stat. § 256.74, subd. 1 (1980). This mandate is consistent with Minnesota's traditional concern for the welfare of its poor. Thus even within the AFDC context of cooperative federalism, we have previously noted that our state agency is accorded "substantial discretion in making need and benefit determinations consistent with local policies and socioeconomic value judgments." *Steere v. State, Department of Public Welfare*, 308 Minn. 390, 402, 243 N.W.2d 112, 120 (1976).

Both the statute quoted in the federal district court's first question, section 256.73, subd. 6, and the statute quoted above in this second question, section 256.74, subd. 1, deal with "assistance." The first statute, however, deals with assistance in terms of who is eligible to receive it. Indeed, subdivision

6, in speaking of income "not specifically disregarded," does so in the context of reports to be completed by the recipients for the local or state agency.[3]

Section 256.74, however, deals directly with how the amount of assistance is to be determined. It says "reasonable subsistence" *shall* be granted. Reasonable subsistence is defined as established need less "other income and support available" with "due regard" given to the family's own resources and expenditures.[4]

The terms "due regard" and "other income and support available" are not defined in the statute except to the extent the subdivision goes on to say that "family income" shall exclude (1) earned income of certain dependent children attending school, (2) certain educational grants and loans made on the basis of financial need, and (3) the "$30 plus one-third" work incentive disregard. The statute is silent on what other kinds of income are to be excluded. In interpreting this language we are required to heed the injunction of Minn.Stat. § 256.-85 (1980) that it "shall be liberally construed" to enable the state to cooperate with responsible mothers in rearing its future citizens.

DPW argues that in giving "due regard" to family circumstances and in calculating what is "other income and support," it is free to refer to the federal law, in this case the federal law on disregards, whatever it may be from time to time. We do not agree. It seems evident to us that the legislature, by this statute, intended the state agency to consider its own interpretation of "due regard" and "income." Since these considerations are directly related to a determination the state agency itself must make, namely, the amount of aid which "shall be granted," it is appropriate that the determination of the amount sufficient for reasonable subsistence should be guided by Minnesota's own statutes. Section 256.73, as construed by us in answering the first question, does not, in our opinion, override the mandate of section 256.74 requiring the state to make its own conclusions in applying section 256.74.

To illustrate, prior to October 1981, "income" to be deducted from established need to determine the amount of aid did not include federal and state income taxes. This was both the state and federal rule. Now, under the 1981 federal amendments, even taxes paid by the working mother could be included in income available to the child. Wages going to pay income taxes are hardly "available" to the family, nor has DPW ever construed such money to be "available" to the dependent child under section 256.74, subd. 1. Accordingly, the state agency may choose to adopt the new federal rule, and so as to receive federal funds we expect that it will do so, but, in our view, it cannot do so without amending section 256.74, subd. 1.

Indeed, this is presently what DPW is proposing to do. DPW is proposing to the current special legislative session House File 4, which will amend section 256.74 by (1) deleting the phrase "with due regard to the resources and necessary expenditures of the family," and (2) adding two new clauses excluding from family income the first $75 of each individual's earned income and up to $160 a month for child care. We believe these amendments are needed to reconcile state law with the federal amendments.

### III.

*Third Question:* Minn.Stat. § 256.74, subd. 1 (1980), states in part: "[I]n making its determination the county agency shall exclude the following from family income: * * * (3) the first $30 plus one-third of the remainder of the combined

---

**3.** The first sentence of Minn.Stat. § 256.73, subd. 6 (1980), which immediately precedes the "not specifically disregarded" language, reads, "Each recipient shall complete reports as requested by the local or state agency."

**4.** Earlier versions of Minn.Stat. § 256.74 (1980) specified the standard of need. In 1941, it was $20 for the first child and $15 for each additional child. Minn.Stat. § 256.74 (1941). In 1945 it was $40 a month for the first child, $15 for the second and $12 for each additional child. Minn.Stat. § 256.74 (1945).

monthly earnings of any dependent child * * *."

1. Does this statute permit the Minnesota Department of Public Welfare to calculate the "one-third of the remainder" with reference to net rather than gross income?

 We answer this question "no." The "$30 plus one-third" formula applies to gross income.

The new federal law, as summarized earlier, applies the "$30 plus one-third" disregard *after* other disregards have been deducted (the "net" income) rather than before any deductions are made (the "gross" income). While DPW is correct in stating that the Minnesota law does not explicitly state when the disregard should be applied, neither is the law silent on the issue. The statute reads:

In making its determination the county agency shall exclude the following from family income:

\* \* \* \* \* \*

(3) The *first* $30 plus one-third of the remainder of the *combined monthly earnings* of any dependent child * * * and any adult * * *.

Minn.Stat. § 256.74, subd. 1(3) (1980) (emphasis supplied).

Two aspects of this statute's language are significant: the direction to use the "first" $30 and the phrase "combined monthly earnings." While "earnings" is not defined, the long history of the department's interpretation of this language and its ordinary usage strongly suggest that gross, rather than net earnings were meant.

Minnesota's statute was modeled after a similar federal statute, which used the term "earned income." 42 U.S.C. § 602(a)(8) (1976). The federal statute has always been read to mean that the "disregard" should be computed on the basis of gross income, and thus the 1981 changes required new wording of the federal statute. *See* 45 C.F.R. § 233.20(a)(11) (1980). Under the new law, the work incentive disregard will be the "first $30 of the total of such earned income *not already disregarded* under the preceding provisions of this paragraph plus one-third of the remainder thereof." P.L. 97-35, 95 Stat. 843 (emphasis added). Significantly, DPW's proposals to the current legislative session include this new language, indicative of a recognition on the part of the DPW that the current version of the state statute requires changing. *See* H.F. 4, page 10, introduced December 1, 1981.

DPW is correct that 12 MCAR § 2.044 D.12.b(8)(a)(i) does not specify when the "$30 plus one-third" disregard should be applied. The rule does, however, apply the disregard to the family's *total* income, language that strongly favors an interpretation of the statute in conflict with the new federal amendments.

The question here is not whether state law should conform to federal law, and therefore the supremacy clause is not an issue. We need answer only whether the state law is inconsistent with the new federal law. In response to the certified questions from the federal district court, our answer is that yes, the recent federal changes in work expense and work incentive calculations conflict with Minnesota law.