STRAS, Justice
(dissenting).
This case requires' us to determine whether the. Commissioner of Revenue may treat part-year Minnesota residents as full-year taxable residents under the physical-presence test in Minn,Stat. § 290.01, subd. 7(b) (2014). Under the plain and unambiguous language of the statute, the answer is no.
L..
The'relevant facts of this case are undisputed. Curtis and Stacy Marks moved -from Minnesota to Florida in 1999, at which time-they became' domiciliaries of Florida. The Markses, however; maintained a house in Minnesota and spent a portion of every year here. The Markses remained domiciliaries of Florida until July 31, 2007, when they decided to reestablish their domicile in Minnesota. Up to that date, the Markses were not Minnesota residents for income-tax purposes. They had spent only 104 days in Minnesota in 2007, well short of the 183 : days necessary to qualify as a non-domiciliary “resident” under Minnesota’s tax laws; See Minn. Stat. § 290.01, subd. 7(b).
*329 On the following day, August. 1, 2007, their legal status changed. The Markses, immediately became --“residents]” of Minnesota when they changed their domicile to Minnesota. See Minn.Stat. § 290.01, subds. .1, 7(a) (2014) (defining “resident”, under the tax laws as an individual domiciled in Minnesota, regardless of the number of days-spent in Minnesota). Thus, when the Markses.filed their 2007 Minnesota income-tax return, they reported their income and tax liability based on the part-year resident status that had; resulted from their change of domicile. Despite the fact that the Markses were domiciled in Minnesota for only part of the year, the Commissioner assessed the Markses for income taxes for the full calendar year, reasoning that the Markses “spent at least 183 days in Minnesota and maintained an abode in Minnesota for the full year.” The tax court disagreed with the Commissioner’s view, concluding that the Markses “were ... part-year domiciliary residents to whom, the [income-tax] allocation rules of Minn.Stat. § 290.17 apply.” Our task is to determine which of these competing views is correct.
II.
Before delving into the specific legal dispute between the parties, an explanation of the relevant terminology and the broader statutory scheme will clarify the analysis. Specifically, this case, and the statute on which it turns, involves the differences between the two types of residents recognized by Minnesota’s tax laws: a domiciled resident and a non-domiciled resident.
A.
Minnesota’s tax laws define “resident” by reference to the concept of “domicile.” MinmStat. § 290.01, subd. 7 (2014). Residence and domicile are relatéd, but distinct, concepts. Residence depends on physical presence. See Sanchez v. Comm’r of Revenue, 770 N.W.2d 523, 526, (Minn.2009); State ex rel. Bd. of Christian Sew. of Lutheran Minn. Conference v. Sch. Bd. of Consol, Sch. Dist. No. 3, 206 Minn. 63, 65-66, 287 N.W. 625, 626 (1939). Establishing a domicile requires a person to have the intent to make a particular place his or her permanent home in addition to being physically present there. See Miller’s Estate p. Comm’r of Taxation, 240 Minn. 18, 19, 59 N.W,2d 925, 926 (1953). As we have, explained, “[d]omicile is the union of residence and intention, and residence without intention, or intention without residence, is of no avail.” Davidner v. Davidner, 304 Minn. 491, 493, 232 N.W.2d 5, 7 (1975). A person can be a resident of multiple states based on physical presence, but .a domiciliary of only one. Sanchez, 770 N.W.2d at 526. The statute governing this appeal recognizes this distinction. MinmStat. § 290.01, subd, 7(a)-(b); Dreyling v. ,Comm’r of Revenue, 711 N.W.2d 491, 494 (Minn.2006) (discussing MinmStat. §. 290.01, subd. 7, and acknowledging that a person can live in another state “for a period of time” without affecting Minnesota domicile).
B.
Minnesota’s tax statutes combine these two concepts, residence and domicile, into a single broad category of individuals: taxable “resident[s],” whose income is subject to taxation by Minnesota for the entire taxable year. See MinmStat. § 290.014, subd. 1 (2014) (declaring that “the net income of a resident individual” is subject to Minnesota tax). There are two types of “resident[s]” under Minnesota’s tax laws. The first type, which I will refer to as “domiciled residents,” includes any individual who is “domiciled in Minnesota.” MinmStat. § 290.01, subd. 7(a). The second type, which I will refer to as “non-domiciled residents,” includes “any individ *330 ual domiciled outside the state who maintains a place of abode in the state and spends in the aggregate more than One-half of the tax year in Minnesota.”[1] Id., subd. 7(b). Only individuals who fall into one of these two categories have their annual income fully subject to Minnesota income taxes.
Based on the definition of “resident” in the tax statutes, individuals in two other categories are also subject to Minnesota income taxes, but only for income allocable to Minnesota. A “nonresident individual! ],” who by the very use of this term is neither a domiciled resident nor a non-domiciled resident, is subject to Minnesota income tax only “to the extent that” his or her income is earned in Minnesota. ' Minn. Stat. § 290.17 subds. 1, 2(a)(1) (2014); The other category of individuals, part-year residents,[2] is mentioned,' but not defined, in the tax statutes. See, e.g., id., subd. 1(c) (2014) (providing a formula for allocating income to Minnesota for individuals who are “residentfe] for only part of a taxable year” and who have earned money from distributive shares). Logically, a part-year resident is an individual who qualifies as a domiciled resident for part — that is, some, but not all — of the taxable year.
III.
With this background in mind, I ’turn now to the statutory question in this case, which is whether the tax laws treat the Markses as full-year or part-year residents of Minnesota. The Commissioner assessed the Markses with a deficiency of $650,789.38 based on her belief that the Markses were full-year “resident[sj” of Minnesota whose entire annual income was subject to Minnesota income taxes in 2007. The Markses, on the other hand, argue that they do not owe any additional taxes because they were part-year residents of Minnesota in 2007 — a conclusion with which the tax court agreed — whose income was subject to the allocation formulas of MinmStat. § ‘290.17 (2014). The resolution of this dispute presents an issue of statutory interpretation that we review de novo. See Hutchinson Tech., Inc. v. Comrn’r of Revenue, 698 N.W.2d 1, 6 (Minn.2005).
A.
As explained above, the tax laws create two types of taxable “resident[s].” The first type, a domiciled Resident, requires only that an individual be “domiciled in Minnesota.” MinmStat. § 290.01, subd. 7(a). In this case, it is undisputed that the Markses changed their domicile from Florida to Minnesota on August 1, 2007, and the legal consequence of this decision was that the Markses became taxable “resi-dentes]” of Minnesota beginning on that date. Accordingly, based exclusively on the definition of “resident” in MinmStat. § 290.01, subd. 7(a), the Markses were part-year residents of Minnesota beginning on August 1, 2007.
The dispute in this case, however, focuses on the second type of taxable resident: *331 the noii-domiciled resident. To qualify as a non-domieiled- resident, an individual must satisfy three requirements. First, the individual must be “domiciled outside the state.” Id., subd. 7(b). Second, the individual must “maintain[] a place of abode in the state.” Id. Third, the individual must “spend[ ] in the aggregate more than one-half of the tax year in Minnesota.” Id.
There is no dispute that, on all days in 2007, the Markses maintained an abode in Minnesota. However, the parties disagree about whether. days spent in Minnesota before the August 1 domicile change can be combined with days spent in Minnesota after the August 1 domicile change in order to tax the Markses as full-year residents who spent “in the aggregate” more than half of 2007 in Minnesota. The court, once it holds that the statutory definition of “resident” is ambiguous, relies on claims about legislative intent and an administrative rule to conclude that the statute requires consideration of all days in which the Markses were present in Minnesota to determine whether they spent “in the aggregate more than one-half of the tax year in Minnesota.” Id. The statute itself repudiates the court’s interpretation.
The two definitions of taxable “resident” are independent and mutually exclusive of one another. An individual simply cannot be both a domiciliary and a non-domiciliary at the same time, which means that only one definition or the other'applies at any given time. Compare MinmStat. § 290.01, subd. 7(a) (“The term ‘resident’ means any individual domiciled in Minnesota....”), with id., subd. 7(b) (“ ‘Resident’ also means any individual domiciled outside the state.... ”). By counting. the days the Markses 'spent in Minnésota after they became domiciliaries in order to determine whether.the Markses, can be taxed as non-domiciliary residents, the court ignores the first statutory requirement for a non-domiciliary resident: the individual must “be domiciled outside'the state” in order for the number of days spent in Minnesota to count. Stated differently, according to the plain words of the statute, only a non-domiciliary must count the number of days spent in Minnesota to determine if he or she is a “resident” óf Minnesota.
Two features of MinmStat. § 290,01, subd. 7(b), lead me to this conclusion. First, the statute contains the conjunctive “and” between the day-count requirement and the two other statutory requirements. See id., subd. 7(b) (“ ‘Resident’ also means any individual domiciled outside the state who maintains a place of abode within the state and spends in the aggregate more than one-half of the. tax year in Minnesota.” (emphasis added)). The use of “and” without any textual indication that a taxpayer can .meet the requirements separately suggests that all three requirements for non-domiciled-resident status must be satisfied simultaneously;. See Lennartson v. Anoka-Hennepin Indep. Sch. Dist. No. 11, 662 N.W.2d 125, 130-31 (Minn.2003) (discussing the use of a. conjunctive in statutory interpretation). Moreover, .under the rules of grammar, the phrase “more than one-half of. the tax year in Minnesota” is a restrictive modifier of “individual domiciled outside the state,” which further suggests that both conditions must be met at the same ’ time. See Larson v. State, 790 N.W.2d 700, 703 (Minn.2010) (“Statutory words and phrases must be construed according to the rules of grammar and common usage.”). [1]
Even aside from the statute’s plain and unambiguous text, it is quite unusual to read a sequential list- of three requirements as permitting piecemeal compliance over time without an' indication from the Legislature that it had contemplated such a possibility. Cf. Wallace v. Comm’r of *332 Taxation, 289 Minn. 220, 230, 184 N.W.2d 588, 593-94 (1971) (prohibiting courts from supplying “that which the legislature purposely omits or inadvertently overlooks”). In fact, the court’s argument that the statute is “temporal[ly] ambigu[ous]” is incorrect because the tenses of the verbs in the statute reveal the temporal relationship among the three requirements for non-domidliary resident status. See State v. Schmid, 859 N.W.2d 816, 820 (Minn.2015) (stating that the “legislature’s ‘use of a verb tense is significant in construing statutes’ ”) (quoting United States v. Wilson, 503 U.S. 329, 333, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992)); see also United States v. Wilson, 503 U.S. 329, 333, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992) (noting that, in statutory interpretation, the use of past-perfect and present-perfect verb tenses can indicate that the condition identified must occur after some’ other event rather than occur simultaneously). This is not a statute that requires- an individual to perform certain steps in chronological order; Rather,- the only reasonable reading of the statute is - that the three requirements must be satisfied simultaneously.
It is undisputed that at no point during the year did the Markses satisfy all three requirements for non-domiciled-resident status at the same time. On July 31, 2007, when the Markses were “domiciled outside the state,” they had spent only 104 days in Minnesota. On August 1, 2007, the date on which they became Minnesota domicili-aries, they-no longer met the requirement of. being “domiciled outside the state.” Therefore, under the independent and mutually exclusive definitions of “resident” in Minn.Stat. § 290.01, subd. 7, the tax court correctly concluded that the Commissioner erred as a matter of law in treating, the Markses as full-year residents of Minnesota in 2007.
B.
The court reaches the contrary conclusion, but it does so only after answering a different question first. The question is not what income Minnesota may tax, as the court appears to believe, but rather how to classify the Markses. It is only after the court deals with other questions that it considers whether the Markses are part-year or full-year residents of Minnesota. The court’s backwards analysis leads it to mix and match various classifications of taxpayers — residents, non-residents, and part-year residents — in a manner that fails to harmonize the- various provisions of chapter 290.
Rather than récognizing the requirement that an individual inust be domiciled outside of thé state for the day count to matter, the court essentially adds a day-count requirement to the definition of domiciled residents in order to allow the Commissioner to count and combine days that a taxpayer spends in Minnesota as both a domiciled resident and as a nonresident. In ;other words, the court mixes and matches elements from both resident definitions to transform what would others wise be part-year residents into full-year residents. There is nothing in either definition of “resident” that permits.such elasticity.[3] Indeed, there is no need to interpret the definition of “resident” elastically at all because the statute already provides *333 guidance on how to tax those individuals who change their domicile during the year. See MinmStat. § 290.17, subds. 1-2 (providing allocation rules).
The court compounds its error by giving an unnatural reading to the day-count interpretive provision, which states that “presence within-the state for any part of a calendar day constitutes a day spent in the state.” MinmStat. § 290.01, subd. 7(b). The only reasonable reading of this provision is that it says that a taxpayer must count a part of one day spent in Minnesota as a full calendar day when considering whether he or she spent “in the aggregate” more than one-half of the calendar year in the state. Id. However, the court ascribes independent significance to this provision, declaring that it does not say that “days spent in Minnesota must be spent as nondomiciliaries to be counted.” The court’s description is true as far as it goes, but the reason the provision does not address how to count days for domiciliarles is that there is no day-count requirement for domiciliaries. After all, domiciled residents are automatically residents for tax purposes once they establish Minnesota as their domicile, regardless of the number of days they have spent in Minnesota.
The court’s interpretation of the statute also ostensibly limits, if not eliminates, part-year-resident status for many eligible taxpayers. Consider the common example of an individual who moves to Minnesota before July 1 of a given year. As is often the case; the individual buys or rents an “abode” prior to arriving in the state and establishes Minnesota as his or her new domicile upon arrival. Under the court’s analysis, the Commissioner of Revenue can treat the taxpayer as a full-year resident of Minnesota, even if the taxpayer had no contact with Minnesota prior to buying or renting the abode. Indeed, all three requirements for non-domiciled-resident status will have been met: (1) the individual was domiciled outside of Minnesota for part of the year; (2) the individual “main-tainted] a place of abode” in Minnesota as a non-domiciliary;’ and (3) the individual spent more than one-half the year, or 183 days, in Minnesota. See Minn.Stat. § 290.01, subd. 7(b). Such an outcome could hardly have been what the Legislature had in mind when it enacted Minn. Stat. § 290.01, subd. 7. : '
One can reasonably disagree with the Legislature’s policy decision to carve out two specific, mutually exclusive definitions of “resident.” One can even take the position that the statute should have allowed Minnesota to tax the Markses as full-year residents in 2007. But that is not what the statute says. When the parties identify a policy result that they prefer, their remedy is to ask the Legislature to amend the statute. As we have stated, if a statute “needs revision in order to make it embody a more sound public policy, the Legisla^-ture, not the judiciary, must be the reviser.” Axelberg v. CommYof Pub. Safety, 848 N.W.2d 206, 213 (Minn.2014).
For these reasons, I respectfully dissent.

. Excluded from this group are any individuals or spouses of individuals "in the armed forces of the United States” and any individuals "covered under the reciprocity provisions” of the tax laws.- Minn.Stat. § 290.01, subd. 7(b)(l)-(2), Neither exclusion.is relevant in this case.

. Part-year resident is a ’ commonly used phrase in tax law to describe individuals like the Markses who change their domicile during the course of a taxable year, making them a part-year resident of two or more states. See, e.g., Sanchez, 770 N.W,2d at 525-26 (discussing "part-year resident! ]” status in Minnesota); see also Suglove v. Okla. Tax Comm’n, 605 P.2d 1315, 1320 (Okla.1979) (stating that, "absent contrary indications,” individuals, "moving to another state” are "routinely taxed as part-year residents” (emphasis added)).

. There is no need to consider the Commissioner’s administrative interpretation in Minn. R.- 8001,0300 because I would conclude that "the statute is unambiguous and . that the administrative rule conflicts with the statute. See Billion v. Comm'r of Revenue, 827 N.W.2d 773, 781 (Minn.2013) (explaining that an administrative rule that conflicts with a statute is "invalid”). To the extent that the ' court relies on the Commissioner's administrative rule to support its mixed-and-matched interpretation of, residency, the court's ap* proach is at odds with the rule preventing the Commissioner from doing exactly what she did here: using an administrative' rule to expand a legislative decision on the law of resi *333 dency. See Wallace, 289 Minn. at 231, 184 N.W.2d at 594 (“It is well established that the legislature may confer discretion on the commissioner in the execution or administration of the law. It may not give him authority to determine what the law shall be or to supply a substantive provision of the law which he thinks the legislature should have included in the first place.”).