**John BILLION, et al., Relators,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

No. A11–2337.

Supreme Court of Minnesota.

March 20, 2013.

Richard E. Billion, Clise, Billion & Cyr, Minneapolis, MN, and Michael M. Billion, Myers & Billion LLP, Sioux Falls, SD, for relators.

Lori Swanson, Attorney General, Kathryn M. Woodruff, Tamar N. Gronvall, Assistant Attorneys General, Saint Paul, MN, for respondent.

## OPINION

STRAS, Justice.

On their 2007 Minnesota individual income tax return, relators John and Deborah Billion ("the Billions") claimed a $55,904 deduction for carryover losses incurred in 2005 by a Minnesota Subchapter S corporation in which John Billion is a shareholder. The Minnesota Commis-

sioner of Revenue ("the Commissioner") disallowed the Billions' $55,904 deduction, resulting in an assessment of $3,736 in additional Minnesota income taxes for the 2007 tax year. The Billions appealed the Commissioner's order to the Minnesota Tax Court, which upheld the assessment by granting the Commissioner's motion for summary judgment. We conclude that the Billions are entitled to a carry-over net operating loss deduction of $7,834 on their 2007 Minnesota individual income tax return, but we affirm the tax court's judgment in all other respects. Accordingly, we affirm the tax court's decision in part, reverse in part, and remand for recalculation of the Billions' Minnesota income tax liability for the 2007 tax year.

## I.

The material facts in this case are undisputed. During calendar years 2005, 2006, and 2007, the Billions were residents of South Dakota and owned business interests that generated income and losses in other states, including Minnesota. During those three years, John Billion ("John") owned stock in Dignified Assisted Living ("Dignified"), a Minnesota Subchapter S corporation that operates solely in Minnesota, and Deborah Billion ("Deborah") owned stock in Kelly Inns, Inc. ("Kelly Inns"), a Subchapter S corporation that operates in multiple states, including Minnesota.[1]

During the years relevant to this appeal, neither John nor Deborah materially participated in the activities of either corporation. As a result, the Billions' ownership interests in Kelly Inns and Dignified indis-putably qualify as "passive activities" for federal income tax purposes. *See* 26 U.S.C. § 469(c) (2006) (defining a "passive activity" as "the conduct of any trade or business ... in which the taxpayer does not materially participate"). The Internal Revenue Code limits a taxpayer's ability to deduct losses from "passive activities" in a particular tax year to an amount equal to the aggregate income earned by the taxpayer that year from "all passive activities." 26 U.S.C. § 469(d) (2006) (defining "passive activity loss" as "the amount (if any) by which the aggregate losses from all passive activities for the taxable year, exceed the aggregate income from all passive activities for such year"). Any excess loss, defined as a "passive activity loss," is not deductible in the year in which it is incurred. 26 U.S.C. § 469(a) (2006) (disallowing a "passive activity loss" for "the taxable year"). However, a taxpayer may carry over a "passive activity loss" to offset income earned from passive activities in future tax years. *See* 26 U.S.C. § 469(a)–(b) (2006) (providing that a "passive activity loss" shall be treated as a deduction allocable to income from passive activities in the next taxable year). Federal law defines a "passive activity deduction" as a deduction reported on a taxpayer's federal income tax return because of losses incurred by the taxpayer from his or her passive activities. 26 C.F.R. § 1.469–2T(d)(1) (2012).

With the pertinent terminology in mind, we turn to the relevant facts underlying the Billions' federal and Minnesota income tax returns from the 2005, 2006, and 2007 tax years. In 2005, John's pro rata share of a loss suffered by Dignified was $71,915. Deborah's pro rata share of Minnesota

---

1. The earnings of a Subchapter S corporation are subject to chapter 1 of the Internal Revenue Code, 26 U.S.C. §§ 1361–1379 (2006), which requires the profits and losses of a Subchapter S corporation to "pass through directly to its shareholders on a pro rata basis and [be] reported on the shareholders' individual tax returns." *Gitlitz v. Comm'r of Internal Revenue*, 531 U.S. 206, 209, 121 S.Ct. 701, 148 L.Ed.2d 613 (2001).

income earned by Kelly Inns for 2005 was $2,217. On their 2005 joint federal income tax return, the Billions applied $49,867 of John's share of the 2005 Dignified loss to offset their 2005 income from other passive activities, including the $2,217 of Minnesota income from Kelly Inns. The Billions also reported on their 2005 federal income tax return that their "passive activity loss" was $22,048, which was the difference between John's pro rata share of Dignified's 2005 losses ($71,915) and the "passive activity deduction" that the Billions reported on their 2005 federal return ($49,867). On their 2005 Minnesota income tax return, the Billions did not report any Minnesota income, meaning that they effectively offset Deborah's pro rata share of Minnesota passive income earned by Kelly Inns of $2,217 with a portion of John's pro rata share of Dignified's 2005 losses.

In 2006, both Dignified and Kelly Inns reported income. John's share of Dignified's 2006 income was $12,696, and Deborah's share of 2006 Minnesota income earned by Kelly Inns was $3,154. On their 2006 joint federal income tax return, the Billions applied $14,214 of the 2005 carryover "passive activity loss" to offset their 2006 income from passive activities, including the Minnesota income from Dignified and Kelly Inns. The remainder of the 2005 carryover "passive activity loss" for federal income tax purposes was $7,834, which was the difference between the carryover "passive activity loss" from the prior year ($22,048) and the "passive activity deduction" that the Billions reported on their 2006 federal return ($14,214). On their 2006 Minnesota income tax return, the Billions did not report any Minnesota income from passive activities, meaning that they again effectively offset their Minnesota passive income of $15,850 with a portion of the carryover "passive activity loss" from 2005.[2]

In 2007, Dignified and Kelly Inns again reported income. John's share of Dignified's 2007 income was $198,142, and Deborah's share of 2007 Minnesota income from Kelly Inns was $3,897. On their 2007 joint federal income tax return, the Billions used the remaining $7,834 of the 2005 carryover "passive activity loss" to offset their 2007 income from passive activities, including the Minnesota income from Dignified and Kelly Inns. The 2007 deduction of $7,834 left the balance of the 2005 carryover "passive activity loss" as zero for federal income tax purposes.[3]

Unlike in previous years, however, the Billions reported income from passive ac-

**2.** The Billions appear to have deducted a larger portion of the 2005 carryover "passive activity loss" on their 2006 Minnesota income tax return ($15,850) than they did on their 2006 federal income tax return ($14,214), which is the same type of alleged error that prompted the Commissioner to assess addi-

tional taxes on the Billions for the 2007 tax year. However, because the Billions' 2007 tax liability is the only issue before us on appeal, we need not decide whether the Commissioner should have disallowed a portion of the deduction reported on the Billions' 2006 Minnesota income tax return.

**3.** For ease of reference, the following table summarizes the relevant figures from the Billions' joint federal tax return for the 2005, 2006, and 2007 tax years:

|  | 2005 | 2006 | 2007 |
| --- | --- | --- | --- |
| Income from Passive Activities | $ 2,217 | $15,850 | $202,039 |
| Losses from Passive Activities | $71,915 | $0 | $0 |
| "Passive Activity Deduction" | $49,867 | $14,214 | $7,834 |
| "Passive Activity Loss" | $22,048 | —— | —— |
| Carryover "Passive Activity Loss" | $22,048 | $7,834 | $0 |

tivities on their 2007 Minnesota income tax return. In offsetting their 2007 income from passive activities, the Billions deducted $55,904 in losses from passive activities on their 2007 Minnesota income tax return—an amount well in excess of the "passive activity deduction" on their 2007 federal income tax return. The Commissioner disallowed the deduction in its entirety and assessed an additional $3,736 in Minnesota income taxes on the Billions for the 2007 tax year. The Commissioner affirmed his decision following an administrative appeal by the Billions.

The Billions appealed to the tax court and argued, as relevant here, that the Commissioner misinterpreted Minnesota's tax law in disallowing the 2007 deduction. The parties filed cross-motions for summary judgment. The court granted the Commissioner's motion and denied the Billions' motion. In doing so, the court determined that John's share of the 2005 Dignified loss—a portion of which became a "passive activity loss" under federal law—constituted a "net operating loss" deduction under Minnesota law. *See* Minn.Stat. § 290.095 (2012) (defining a "net operating loss" and explaining how such a loss is treated under Minnesota's tax law). Applying the provisions of Minn.Stat. § 290.095, the court observed that the Billions were only permitted to deduct a "net operating loss," including any amount carried over from a prior year, in an amount equal to the "net operating loss deduction" claimed in the Billions' federal income tax return. *See id.*, subd. 11(a), (b) (limiting the amount of a "net operating loss" deduction). Because the $55,904 sum deducted on the Billions' 2007 Minnesota income tax return exceeded the portion of the 2005 Dignified loss deducted on the Billions' 2007 federal income tax return, the court upheld the Commissioner's disallowance of the deduction. Following the tax court's entry of judgment in favor of

the Commissioner, the Billions petitioned this court for certiorari.

## II.

■ We review a tax court's order granting summary judgment to determine whether the tax court "erred in applying the law and whether any material facts are disputed." *Sanchez v. Comm'r of Revenue*, 770 N.W.2d 523, 525 (Minn.2009). Because the material facts in this case are undisputed, the only question before us is whether the tax court correctly applied Minnesota law. *See id.*

As a preliminary matter, the parties disagree about the standard applicable to the interpretation of tax statutes. Relying primarily on tax court decisions, the Billions argue that we must interpret tax statutes strictly against the Commissioner because such statutes deprive citizens of their property. *See, e.g., Concord Prop. Co. v. Cnty. of Otter Tail*, No. 33467, 1987 WL 19134, at *5 (Minn. T.C. Oct. 5, 1987). The Commissioner, on the other hand, argues that we must interpret tax statutes permitting deductions from income strictly against the taxpayer because deductions are "a matter of legislative grace." *Comm'r of Revenue v. Richardson*, 302 N.W.2d 23, 26 (Minn.1981).

■ Neither party accurately articulates the correct standard for interpreting tax statutes. As we have stated, when the "'language of a[tax] statute is clear and unambiguous, the plain meaning of the statute controls.'" *Amoco Corp. v. Comm'r of Revenue*, 658 N.W.2d 859, 871–72 (Minn. 2003) (quoting *Green Giant Co. v. Comm'r of Revenue*, 534 N.W.2d 710, 712 (Minn. 1995)). Only when a statute is ambiguous do we apply canons of construction to determine a statute's meaning. *See KSTP-TV v. Ramsey Cnty.*, 806 N.W.2d 785, 788 (Minn.2011).

Both parties urge us to strictly construe the relevant tax statutes in favor of their preferred positions. However, like many canons of construction, a rule of strict or liberal construction operates only after we have concluded that a statute is ambiguous. *See Larson v. State,* 790 N.W.2d 700, 704 (Minn.2010) ("[A] rule of liberal construction does not apply where ... a statute is unambiguous on its face."); *Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 759 (Minn.2010) (concluding that a court cannot ignore the plain meaning of statute in the guise of liberal construction); *La Bere v. Palmer,* 232 Minn. 203, 205, 44 N.W.2d 827, 829 (1950) (rejecting the application of the canon of liberal construction for a remedial statute because "[c]onstruction belongs wholly to the domain of ambiguity"). By definition, an unambiguous statute is subject to only one reasonable interpretation, and thus there is no reason to apply a strict or liberal construction to an unambiguous statute to ascertain its meaning. *See Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (explaining that "canons of construction are no more than rules of thumb that help courts determine the meaning of legislation" and such canons are inapplicable "[w]hen the words of a statute are unambiguous"). Here, neither the Commissioner nor the Billions argue that the tax statutes applicable to the treatment of John's pro rata share of Dignified's 2005 losses are ambiguous. Because we also conclude that the tax statutes governing this case are unambiguous, we need not, and do not, reach the question of what standard would apply if the relevant statutes were ambiguous.

## III.

The principal dispute in this case is whether the Billions are entitled to deduct $55,904 as a "net operating loss" or a "passive activity loss" on their 2007 Minnesota income tax return. In disallowing the deduction and granting summary judgment to the Commissioner, the tax court essentially concluded that, regardless of whether the 2005 Dignified loss is treated as a "passive activity loss" or a "net operating loss," Minn.Stat. § 290.095, subd. 11 limits the deductibility of the loss on the Billions' 2007 Minnesota income tax return to the amount of the loss that the Billions deducted on their 2007 federal income tax return. We must determine whether the tax court "erred in applying the law." *Sanchez,* 770 N.W.2d at 525.

### A.

The Billions' first theory is that the $55,904 is deductible as a carryover "passive activity loss" on their 2007 Minnesota income tax return. For federal income tax purposes, John's pro rata share of Dignified's 2005 losses was subject to the rules applicable to losses from passive activities because John did not "materially participate" in Dignified's business. 26 U.S.C. § 469(c)(1). Congress enacted 26 U.S.C. § 469—the provision governing the tax treatment of income and losses from passive activities—as part of the Tax Reform Act of 1986 in order to limit the financial incentive to create tax shelters. *Krukowski v. Comm'r of Internal Revenue,* 279 F.3d 547, 549 (7th Cir.2002). Prior to 1986, taxpayers could use losses from passive activities to offset nonpassive income, which permitted them to shelter active income such as wages, salary, and interest from taxation. *Van Scoten v. Comm'r of Internal Revenue,* 439 F.3d 1243, 1249–50 n. 4 (10th Cir.2006). Congress enacted the law limiting the ability of taxpayers to deduct losses from passive activities to discourage investments made solely to shield income from taxation. *See In re Rueter,* 158 B.R. 163, 164–65 (N.D.Cal.1993); *see*

*also Sidell v. Comm'r of Internal Revenue,* 225 F.3d 103, 108 (1st Cir.2000) (explaining that, in enacting the Tax Reform Act of 1986, "Congress sought to eliminate a host of tax shelters that savvy taxpayers had concocted over time").

■■■ Minnesota has not adopted the passive activity rules created by the Tax Reform Act of 1986. Under Minnesota law, taxpayers may only claim deductions that are "plainly authorized" by statute. *Reuben L. Anderson–Cherne, Inc. v. Hatfield,* 279 Minn. 478, 482, 158 N.W.2d 840, 842 (1967) (explaining that tax deductions "are allowed only when plainly authorized" by statute); *see also Nat'l Can Corp. v. Comm'r of Revenue,* 437 N.W.2d 416, 418 (Minn.1989) (stating that "[t]axation is presumed and the burden is on the taxpayer to show [that he or she] is entitled to a deduction"). In this case, the Billions have not cited any Minnesota statute that specifically authorizes them to deduct losses from passive activities in calculating their Minnesota income tax liability. Indeed, Minnesota law does not mention a "passive activity," "passive activity loss," or "passive activity deduction," and there is no statute specifically incorporating these terms and concepts into Minnesota tax law. In the absence of any statutory authority for a separate Minnesota deduction for losses from passive activities, the passive activity rules from federal law are limited to their impact on the calculation of a taxpayer's federal taxable income, which a taxpayer must use when calculating his or her Minnesota tax liability. *See* Minn. Stat. § 290.01, subds. 19, 22 (2012) (defining "net income" and "taxable net income" by reference to "federal taxable income" as defined in the Internal Revenue Code); *id.* § 290.06, subd. 2c(e) (2012). We therefore conclude that Minnesota law does not entitle the Billions to a "passive activity deduc-

tion" on their Minnesota income tax return.

The Billions disagree, arguing that they were entitled to a "passive activity deduction" on their 2007 Minnesota income tax return because the deduction is incorporated by reference into Minnesota law. The Billions' position, in other words, is that Minnesota law requires them to deconstruct their federal adjusted gross income and then recalculate their Minnesota adjusted gross income based on Minnesota-source income and losses using the federal rules. Relying on the rules governing the deductibility of a carryover "passive activity loss" under federal law, the Billions further assert that they may segregate Dignified's 2005 losses of $71,915 into two pots: one for offsetting their federal income from passive activities and the other for offsetting their Minnesota income from passive activities. For support, the Billions rely on Minn.Stat. § 290.06, subd. 2c(e), which provides a formula for calculating Minnesota tax liability for nonresident taxpayers based in part on the taxpayer's "Minnesota source federal adjusted gross income as defined in section 62 of the Internal Revenue Code."

The Billions, however, read Minn.Stat. § 290.06, subd. 2c(e) far too broadly. That provision provides a formula for the allocation of income between Minnesota and non-Minnesota sources for purposes of calculating a taxpayer's Minnesota tax liability. It simply informs taxpayers that the Minnesota tax liability calculation must include the Minnesota portion of a taxpayer's federal adjusted gross income. It does not provide a blanket authorization for incorporating all federal tax rules into Minnesota tax law. To the contrary, subdivision 2c(e) makes clear that the Minnesota portion of a taxpayer's federal adjusted gross income may be modified only by certain additions and subtractions specifi-

cally authorized by Minnesota statute. Minn.Stat. § 290.06, subd. 2c(e) (listing a number of Minnesota-specific subtractions and additions to "Minnesota source federal adjusted gross income as defined in section 62 of the Internal Revenue Code"). We therefore reject the Billions' claim that subdivision 2c(e) creates a separate "passive activity deduction" under Minnesota law.

### B.

The Billions' second theory is that John's pro rata share of Dignified's 2005 losses constitutes a "net operating loss" that may be deducted on the Billions' 2007 Minnesota income tax return. Minnesota law defines a "net operating loss" by reference to federal law: "[t]he term 'net operating loss' ... shall mean a net operating loss as defined in section 172(c) of the Internal Revenue Code," subject to certain modifications that are not at issue here. Minn.Stat. § 290.095, subd. 2(a). Section 172(c) of the Internal Revenue Code defines "net operating loss," in turn, as "the excess of the deductions allowed by [chapter 1 of the Internal Revenue Code] over the gross income," again subject to certain modifications that do not apply in this case. 26 U.S.C. § 172(c) (2006).

■ Neither party disputes that Dignified's 2005 losses constituted a "net operating loss" to Dignified. Under Minnesota law, with respect to Subchapter S corporations,

> [t]he character of any item of income, gain, loss, or deduction included in shareholder's income, for the period of time that the shareholder is not a resident of Minnesota, shall be determined as if the item were realized directly from the source from which it was realized by the corporation or incurred in the same manner as incurred by the corporation.

Minn.Stat. § 290.9726, subd. 2 (2012). Subdivision 2 of section 290.9726 makes clear that, although profits and losses from a Subchapter S corporation are "passed through" to its shareholders, the character of any profits, losses, and deductions for nonresident shareholders is determined at the entity level, not at the shareholder level. Accordingly, because the 2005 losses constituted a "net operating loss" to Dignified, they also constituted a "net operating loss" to Dignified's nonresident shareholders, including John.

Although Minnesota has not adopted the federal limitations on losses from passive activities, Minnesota law indirectly restricts the availability of tax shelters by limiting the deductibility for individual income tax purposes of a "net operating loss" incurred by a Subchapter S corporation in which the taxpayer is an investor. More specifically, the "net operating loss" deduction on an individual taxpayer's Minnesota income tax return in a given year must be equal to the deduction attributable to that loss on the taxpayer's federal income tax return in that same year:

> The net operating loss carryback or carryover *applied as a deduction* in the taxable year to which the net operating loss is carried back or carried over *shall be equal to the net operating loss carryback or carryover applied in the taxable year in arriving at federal taxable income.*

Minn.Stat. § 290.095, subd. 11(b) (emphasis added).

On the Billions' 2007 federal income tax return, the Billions deducted $7,834 of Dignified's carryover "net operating loss"—which federal law treated as a carryover "passive activity loss." Under the plain language of subdivision 11(b), the Billions could only "appl[y] as a deduction" on their Minnesota income tax return an amount "equal to the net operating loss carryback

or carryover applied" in arriving at their federal taxable income for 2007. In deducting $55,904, rather than the $7,834 deducted on their 2007 federal income tax return, the Billions violated the clear mandate of Minn.Stat. § 290.095, subd. 11(b).

Relying on a Minnesota administrative rule, the Billions argue that they are entitled to deduct a carryover "net operating loss" on their Minnesota income tax return even for sums that they used to offset federal taxable income in prior years. The rule relied upon by the Billions, Minn. R. 8002.0200, subp. 8 (2011), provides as follows:

> The net operating loss carryback or carryover applied as a deduction in the taxable year to which the net operating loss is carried back or carried over shall be equal to the net operating loss carryback or carryover applied in the taxable year in arriving at federal adjusted gross income. . . .

> No additional net operating loss carryback or carryover shall be allowed if the entire amount has been used to offset Minnesota income in a year earlier than was possible on the federal return. *A net operating loss carryback or carryover that was allowed to offset federal income in a year earlier than was possible on the Minnesota return shall still be allowed to offset Minnesota income.*

(Emphasis added.) The Billions contend that the last sentence of Rule 8002.0200, subpart 8 permits them to claim the balance of any "net operating loss" in 2007 that they did not deduct on their Minnesota income tax returns in prior years, regardless of whether the amount exceeds the loss deducted on their 2007 federal income tax return. We disagree.

While the Billions' interpretation of the administrative rule has considerable merit, their interpretation results in a conflict between Minn.Stat. § 290.095, subd.

11(b) and Rule 8002.0200, subpart 8. More specifically, Minn.Stat. § 290.095, subd. 11(b)(2) permits *only* "trusts and estates" to deduct a carryover "net operating loss" deducted in a prior year on a federal income tax return to offset Minnesota taxable income in a later year:

> *[T]rusts and estates* must apply the following modifications [to the net operating loss carryback or carryover applied as a deduction]:

> . . . if a net operating loss carryback or carryover was allowed to offset federal income in a year earlier than was possible on the Minnesota return, *an estate or trust* shall still be allowed to offset Minnesota income but only if the loss was assignable to Minnesota in the year the loss occurred.

(Emphasis added.) Yet the plain language of the final sentence of Rule 8002.0200, subpart 8 arguably provides that *anyone,* including an individual, may deduct on a Minnesota income tax return any carryover "net operating loss" reported on a prior year's federal tax return. Although "administrative agencies may adopt regulations to implement or make specific the language of a statute, they cannot adopt a conflicting rule." *Green v. Whirlpool Corp.,* 389 N.W.2d 504, 506 (Minn.1986) (citing *Dumont v. Comm'r of Taxation,* 278 Minn. 312, 154 N.W.2d 196 (1967)). To the extent that Rule 8002.0200, subpart 8 conflicts with Minn.Stat. § 290.095, subd. 11(b) by extending a taxpayer's ability to claim a "net operating loss" reported on a prior year's federal tax return beyond just estates and trusts, the administrative rule is invalid. *See Hirsch v. Bartley–Lindsay Co.,* 537 N.W.2d 480, 486 (Minn.1995) (stating that an applicable statute "prevails" to the extent that it conflicts with an administrative rule). We therefore reject the Billions' argument based on the text of Rule 8002.0200, subpart 8.

## C.

The final issue presented by this case is whether the Billions are entitled to claim *any amount* as a "net operating loss" deduction on their 2007 Minnesota income tax return. The Commissioner disallowed the entirety of the Billions' "net operating loss" deduction for 2007. On appeal, the tax court concluded that the Billions' 2007 "net operating loss" deduction was limited to the amount of the loss that they deducted on their federal return ($7,834), but the court nevertheless affirmed the Commissioner's determination in full. The tax court erred when it upheld the Commissioner's decision in its entirety.

As discussed above, Minnesota law "allow[s] as a deduction for the taxable year the amount of any net operating loss deduction as provided in section 172 of the Internal Revenue Code." Minn.Stat. § 290.095, subd. 1(a). The amount of the deduction is then determined by Minn. Stat. § 290.095, subd. 11(b), which states that, for individuals, "net operating loss carryback or carryover applied as a deduction . . . shall be equal to the net operating loss carryback or carryover applied in the taxable year in arriving at federal taxable income." The use of the active verbs "allowed" in subdivision 1(a) and "applied" in subdivision 11(b) to modify the phrase "as a deduction" in these provisions indicates that the statutes grant taxpayers permission to take an action—that is, to claim a deduction—that otherwise would not be available to them. *See American Heritage Dictionary of the English Language* 48 (5th ed.2011) (defining "allow[ed]" as "[t]o let do or happen; permit"); *id.* at 86 (defining "appl[ied]" as "[t]o put into action"). Put differently, the text of subdivisions 1(a) and 11(b), when read together, authorizes taxpayers to claim a separate "net operating loss" deduction in calculating their Minnesota income tax liability that is "equal to the net operating loss" carryover deducted on their federal income tax return. We therefore reverse the tax court's decision to the extent that it prohibited the Billions from claiming a $7,834 "net operating loss" deduction on their 2007 Minnesota income tax return.

## IV.

For the foregoing reasons, we affirm the tax court's decision in part, reverse in part, and remand to the tax court for recalculation of the Billions' Minnesota income tax liability for the 2007 tax year.

Affirmed in part, reversed in part, and remanded.