STATE OF MINNESOTA

IN SUPREME COURT

A15-1145

Tax Court                                                                Lillehaug, J.
                                      Dissenting, Stras, J., Gildea C.J., Anderson, J.

Curtis G. and Stacy S. Marks,

                Respondents,

vs.                                                            Filed:  February 17, 2016
                                                               Office of Appellate Courts
Commissioner of Revenue,

                Relator.

_____

Barry A. Gersick, Michael C. McCarthy, Charles G. Frohman, Maslon LLP, Minneapolis, Minnesota, for respondents.

Lori Swanson, Attorney General, John R. Mulé, Tamar N. Gronvall, Assistant Attorneys General, Saint Paul, Minnesota, for relator.

_____

S Y L L A B U S

When determining whether a taxpayer was a "resident" as defined in Minn. Stat. § 290.01, subd. 7(b) (2014), the Commissioner may aggregate all the days the taxpayer spent in Minnesota during the tax year, including the days spent in the state as a domiciliary.

Reversed and remanded.

1

O P I N I O N

LILLEHAUG, Justice.

In 2007, respondents Curtis and Stacy Marks filed Minnesota tax returns, claiming they were part-year residents of the state. Following an audit, the Commissioner of Revenue (the Commissioner) determined that the Markses were full-year residents and assessed additional income tax, penalties, and interest. The Markses appealed, arguing that the Commissioner improperly applied the definition of "resident" in Minn. Stat. § 290.01, subd. 7(b) (2014). The tax court granted summary judgment to the Markses. Because we conclude that the tax court's interpretation of the statute was erroneous, we reverse and remand.

I.

Curtis and Stacy Marks moved from Minnesota to Florida in 1999. Though they became Florida domiciliaries that year, they continued to maintain a home in Minnesota and spent significant time here. On August 1, 2007, the Markses re-established domicile in Minnesota. During 2007, Curtis Marks was physically present or domiciled in Minnesota for a total of 257 days (70% of the year).[1] When the Markses filed their Minnesota tax return for 2007, they claimed part-year resident status.

In 2009, the Commissioner began an audit of the Markses' prior year tax returns, including their return for 2007. In November 2010, the Commissioner determined that the definition of "resident" in Minn. Stat. § 290.01, subd. 7(b), applied to the Markses for the

---

[1]     The parties stipulated that Curtis Marks spent more than 183 days in the state, 104 of which were prior to re-establishing domicile.

2

2007 tax year and that they were therefore full-year residents of Minnesota that year. The Commissioner allocated the Markses' worldwide income for the full year to Minnesota and assessed additional income tax, penalties, and interest in the amount of $626,719.81. The Markses filed an administrative appeal, and the Commissioner upheld the ruling, resulting in a balance due of $650,789.38.

The Markses appealed the Commissioner's determination to the tax court, where the parties filed cross-motions for summary judgment based on their respective statutory interpretations. The tax court granted the Markses' motion and denied the Commissioner's motion, concluding that the Markses were not residents under the statute because they spent fewer than 183 days in Minnesota prior to becoming domiciled here, and "the only days that may be aggregated for purposes of satisfying the [physical presence] requirements of subdivision 7(b) are those spent in Minnesota while 'domiciled outside the state.' "

Based on the tax court's order and a stipulation that the Markses established Minnesota domicile on August 1, 2007, the parties stipulated to the proper allocation of the Markses' income. The stipulated allocation resulted in the Markses owing additional tax, penalties, and interest of $271,623.89. The tax court entered an Order for Judgment requiring the Markses to pay that amount. This appeal followed. The amount in dispute is at least $379,000.

II.

The Commissioner contends that the tax court's interpretation of Minn. Stat. § 290.01, subd. 7(b), is erroneous and that the plain language of the statute allows the Commissioner to count all days an individual spent in Minnesota in a given tax year to

3

determine whether the individual was a "resident" of the state. The Markses, on the other hand, argue that the tax court correctly held that the statute's plain language allows the counting of only days spent in Minnesota as nondomiciliaries.

We review de novo whether the tax court committed an error of law, such as an erroneous interpretation of a statute. *ILHC of Eagan, LLC v. Cty. of Dakota*, 693 N.W.2d 412, 418-19 (Minn. 2005). When we interpret statutes, our objective is to ascertain and effectuate the intent of the Legislature. *Brayton v. Pawlenty*, 781 N.W.2d 357, 363 (Minn. 2010); *see also* Minn. Stat. § 645.16 (2014). "When the words of a statute in their application to an existing situation are clear and free from all ambiguity," we must give effect to the plain meaning of the law. Minn. Stat. § 645.16; *accord Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). A statute is ambiguous if, as applied to the facts of the case, it is susceptible to more than one reasonable interpretation. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72-73 (Minn. 2012). If a statute is ambiguous, we may look beyond the statute's text to ascertain the intent of the Legislature. *See* Minn. Stat. § 645.16.

Minnesota Statutes § 290.17 (2014) describes what income must be allocated to the State of Minnesota for individual income tax purposes. The statute provides different rules for income allocation depending on the taxpayer's residency. For a "resident," all income is subject to Minnesota income tax. *See* Minn. Stat. § 290.17, subd. 1(a). For a nonresident and an "individual who is a resident for only part of a taxable year," the amount of income allocated to Minnesota depends on the type of income. *See, e.g.*, Minn. Stat. § 290.17, subd. 2(a)(1) (allocating income from wages to Minnesota to the extent that the work of

4

the employee was performed in Minnesota); Minn. Stat. § 290.17, subd. 1(c) (providing a formula for determining the amount of partnership, S corporation, trust, or estate income allocated to Minnesota for part-year residents). Though nonresident and part-year resident status is crucial to the allocation rules under Minn. Stat. § 290.17, that statute does not define "nonresident" or an "individual who is a resident for only part of a taxable year."

However, Minn. Stat. § 290.01, subd. 7, does provide two definitions of the term "resident." The statute provides, in relevant part:

> (a) The term "resident" means any individual domiciled in Minnesota.
> . . .
>
> (b) "Resident" also means any individual domiciled outside the state who maintains a place of abode in the state and spends in the aggregate more than one-half of the tax year in Minnesota . . . .
>
> For purposes of this subdivision, presence within the state for any part of a calendar day constitutes a day spent in the state.

Minn. Stat. § 290.01, subd. 7. These definitions apply "for the purposes of [chapter 290,]" "[u]nless the language or context clearly indicates that a different meaning is intended." *Id.*, subd. 1.[2]

Subdivision 7, passed in 1987, does not squarely address how to determine the residency of individuals domiciled in Minnesota for only part of a year. In 1988 the

---

[2]    The dissent asserts that the statute creates "two types of residents": "domiciled resident[s]" and "non-domiciled resident[s]." But there are not "types" of residents in the law; instead, there are two definitions applicable to determine whether an individual is a "resident." Nor does the applicable statute use the term "part-year residents"; instead, it employs the phrase "resident for only part of a taxable year." Minn. Stat. § 290.17, subd. 1(c). For the purposes of income allocation, the statute does not require the Commissioner to determine if a person is a "part-year resident," but rather, whether that person was a "resident" for the entire tax year or for "only part of a taxable year." *Id.*

Commissioner promulgated Minn. R. 8001.0300, subp. 8 (2015) (the Rule), which states that

> persons domiciled outside Minnesota who move their domiciles to Minnesota during the tax year are part year residents of Minnesota. The physical presence test does not apply to such persons unless a Minnesota abode is maintained during the period domiciled outside of Minnesota.

The Rule also provides examples of its application to different factual scenarios. One such example addresses an individual who spends part of the year domiciled in the state and part of the year domiciled outside the state. The example clarifies that if an individual maintains an abode in Minnesota while domiciled outside the state, all days the individual spends in Minnesota that year—whether as a domiciliary or not—can be aggregated to determine whether the individual is a full-year resident. Minn. R. 8001.0300, subp. 10B.

III.

We begin our analysis by determining whether the plain language of the statute clearly and unambiguously requires a particular result in this case. Both the Markses and the Commissioner contend that the statute's plain language requires us to adopt their respective interpretations. However, we conclude that the statute's text is susceptible to two reasonable interpretations regarding whether an individual is a "resident" when that individual is domiciled *both* "in Minnesota" and "outside the state" during a given tax year. As a result, the statute is ambiguous.

One reasonable interpretation, advanced by the Markses and adopted by the tax court, is that the phrase "domiciled outside the state" limits the rest of subdivision 7(b) and requires that the individual fulfill the conditions of abode and physical presence entirely

6

during the portion of the year that the individual is domiciled outside Minnesota. Though the statute's plain language requires the Commissioner to examine whether the individual in question "spends in the aggregate more than one-half of the tax year in Minnesota," under the Markses' reading that language serves only to indicate that the days spent in Minnesota as nondomiciliaries need not be consecutive to count as days spent in the state. Thus, under this reasonable reading, an individual whose domicile changes during a tax year is only a "resident" for the full year if that individual both maintains an abode in the state and spends at least 183 days in Minnesota *while domiciled in another state*.

But the Commissioner's interpretation is also reasonable. The Commissioner argues that when an individual is domiciled both inside and outside Minnesota in a single tax year, subdivision 7(b) contemplates that the Commissioner will count all the days the individual is present in the state during that year to determine whether that person is a "resident." Under this interpretation, the phrase "domiciled outside the state" does not limit the time periods that may be examined to determine whether the abode and physical presence conditions are fulfilled during the tax year, but rather provides that individuals may be taxed as residents for portions of the year that they were not domiciled in Minnesota if during the tax year they maintained the substantial contacts with the state that subdivision 7(b) requires: abode and physical presence for more than half the year. As a result, under the Commissioner's interpretation, the definition of "resident" applies to all individuals who fulfill three conditions during the tax year: domicile outside Minnesota, maintenance of an abode in Minnesota, and physical presence in Minnesota for more than half the tax year. This reading of the statute is further supported by the subdivision's unqualified

7

statement that "[f]or purposes of this subdivision, presence within the state for any part of a calendar day constitutes a day spent in the state." Minn. Stat. § 290.01, subd. 7. Neither that provision nor subdivision 7(b)'s "resident" definition itself states that days spent in Minnesota must be spent as nondomiciliaries to be counted.

Because both the interpretations proferred by the Markses and by the Commissioner are reasonable interpretations of the statute, we conclude that the text of subdivision 7(b) is ambiguous.

The dissent, though, sees no ambiguity whatsoever, arguing that subdivision 7(b) can only be read such that all three requirements—domicile outside Minnesota, abode, and physical presence—must be "satisfied simultaneously," not just within the tax year, but on a day-by-day basis. We cannot share the dissent's certitude; subdivision 7(b) is just not that clear. While subdivision 7(b) requires that all three requirements be met within the tax year in question, it lacks further temporal precision. For example, the statute does not specify the minimum time period for maintaining "a place of abode in the state." Nor does the statute describe whether the time of non-domiciliary status and the time of abode maintenance must be congruent. Thus, there is temporal ambiguity between and among the requirements.

To be sure, the dissent's theory that the three requirements each run day-by-day with one another would be stronger if the Legislature had drafted the statute to read: "any individual domiciled outside the state who, *during that time,* maintains a place of abode and . . .", or "who *as a non-domiciliary* maintains a place of abode and . . ." But the statute

8

says neither of these things. And we do not have the authority to fill in those words. *See Wallace v. Comm'r of Taxation*, 289 Minn. 220, 230, 184 N.W.2d 588, 593-94 (1971).

IV.

Because the statute is susceptible to two reasonable interpretations, we must look beyond the text to determine legislative intent. The Legislature has provided a list of factors to consider and presumptions to apply when ascertaining legislative intent. Minn. Stat. § 645.16-.17 (2014). Two are dispositive here.

First, we may look to the purpose of the law. *BCBSM, Inc. v. Comm'r of Revenue*, 663 N.W.2d 531, 533 (Minn. 2003); *see also* Minn. Stat. § 645.16(1), (4) (directing courts to ascertain legislative intent by examining "the occasion and necessity for the law" and "the object to be attained" by the law). Income taxes are founded upon an individual's obligation to contribute to the costs associated with the services, benefits, and protections provided by government. *Luther v. Comm'r of Revenue*, 588 N.W.2d 502, 509 (Minn. 1999) (citing *Maguire v. Trefry*, 253 U.S. 12, 14 (1920)). That is why Minnesota's income tax regime is meant to tax individuals and entities that have significant contacts with the state. *See id.; see also, e.g.*, Minn. Stat. § 290.17, subd. 2 (taxing wages, even of nonresidents, if their work was performed in Minnesota).

Subdivision 7(b) in particular serves the purpose of requiring individuals who avail themselves of Minnesota's services, benefits, and protections through substantial contact with the state for most of the year to pay taxes on their entire income. The Markses, who spent 70 percent of the year in Minnesota in an abode they owned here, enjoyed those

9

services, benefits, and protections as much as or more than any non-domiciliary who spent 51 percent of the year in Minnesota.

Second, in ascertaining legislative intent, we consider administrative interpretations of the statute. Minn. Stat. § 645.16(8). Administrative agencies may adopt regulations to implement or make specific the language of a statute, *Billion v. Comm'r of Revenue*, 827 N.W.2d 773, 781 (Minn. 2013), and the Commissioner's rules implementing tax statutes have the force of law, Minn. Stat. § 270C.06 (2014). The Commissioner's interpretation of income tax statutes is entitled to deference, *see Benda v. Girard*, 592 N.W.2d 452, 455 (Minn. 1999), and we give great weight to longstanding agency interpretations of statutes the agency is charged with administering, *see Greene v. Comm'r of Minn. Dept. of Human Servs.*, 755 N.W.2d 713, 722 (Minn. 2008); *U.S. W. Material Res., Inc. v. Comm'r of Revenue*, 511 N.W.2d 17, 20-21 & n.2 (Minn. 1994).

As already noted, the statutes the Commissioner is tasked with implementing are ambiguous as to whether an individual is a "resident for only part of a taxable year" when the individual is domiciled both inside and outside Minnesota during a single tax year. The Commissioner's Rule, however, clarifies that topic. The Rule provides that individuals who change their domicile to Minnesota during a tax year are typically part-year residents of the state. Minn. R. 8001.0300, subp. 8. However, the Rule also specifically provides that the definition of "resident" in subdivision 7(b) applies to such persons if they maintain an abode in Minnesota during the period they are not domiciled here. *Id.*

Further, the example in the Rule's subpart 10B demonstrates that, if the Rule is applied to the Markses, they were full-year residents. In the example, "T" is domiciled and

physically present in Minnesota from January 1 until September 1 (more than 183 days). *Id.*, subp. 10B. "T" then changes domicile to another state, but continues to maintain an abode in Minnesota. *Id.* The Rule explains that "T" is subject to subdivision 7(b) and therefore is a full-year Minnesota resident for the tax year in question. *See id.* The factual scenario in the example does differ slightly from that of the Markses in that "T" changes domicile *from* Minnesota mid-year whereas the Markses changed theirs *to* Minnesota mid-year. However, the logic of the example clearly and directly applies to the Markses; under the Rule, both "T" and the Markses are full-year residents even though days spent in Minnesota as a domiciliary must be counted for subdivision 7(b)'s definition to apply to them.

The Markses argue that an administrative rule cannot conflict with the corresponding statute. Of course, we agree. *See Billion*, 827 N.W.2d at 781. But this Rule does not. It is consistent with, and clarifies, the Commissioner's reasonable interpretation of subdivision 7(b). Because the Rule addresses a topic on which the statute is ambiguous, it does not conflict with the statute and is entitled to deference. Further, the Rule was promulgated in 1988, immediately following the 1987 adoption of the relevant language in Minn. Stat. § 290.01, subd. 7. In the 27 years since the Rule's promulgation, the Legislature has not amended the statute to overturn or alter the Rule. As a reasonable and longstanding interpretation of the statute, the Rule should be given considerable weight as we ascertain legislative intent.

The Markses also argue that, if the statute is ambiguous, we must necessarily resolve the ambiguity in their favor because they are taxpayers. But their approach would require

11

us to bypass a necessary step in statutory construction. When the language of a statute is ambiguous the Legislature has given us statutory canons to ascertain and effectuate its intent. *See* Minn. Stat. § 645.16. We "consider among other matters: the purpose of the law, the circumstances of its enactment, and the mischief the law was meant to remedy." *BCBSM, Inc.*, 663 N.W.2d at 533. When, after such consideration, we are still unable to ascertain legislative intent, we resolve the ambiguity in favor of the taxpayer. *See id*. at 534. This principle of construction rests on the premise that we lack authority to extend the scope of a tax-levying statute beyond the clear meaning of the statute. *See Northland Country Club v. Comm'r of Taxation*, 308 Minn. 265, 267, 241 N.W.2d 806, 807 (1976) (quoting *Charles W. Sexton Co. v. Hatfield*, 263 Minn. 187, 195, 116 N.W.2d 574, 580 (1962)).

In this case, after applying the statutory canons, the intent of the Legislature is not in doubt. Therefore, we have no occasion to apply the principle of construction specific to tax cases.

## V.

In sum, we conclude that there are two reasonable ways to read Minn. Stat. § 290.01, subd. 7, to determine whether an individual is a "resident" when that individual is both "domiciled in Minnesota" and "domiciled outside the state" during a given tax year. The statute is therefore ambiguous. Because we conclude that we can ascertain the intent of the Legislature by considering the statute's purpose and a longstanding agency interpretation that is entitled to deference, we hold that the statute allows the Commissioner to count all the days a taxpayer is physically present in Minnesota to determine whether

12

the taxpayer is a "resident" as defined in Minn. Stat. § 290.01, subd. 7(b), including days spent in the state as a domiciliary. Accordingly, we reverse and remand to the tax court for a recalculation of the Markses' tax debt in accordance with this opinion.

Reversed and remanded.

STRAS, Justice (dissenting).

This case requires us to determine whether the Commissioner of Revenue may treat part-year Minnesota residents as full-year taxable residents under the physical-presence test in Minn. Stat. § 290.01, subd. 7(b) (2014). Under the plain and unambiguous language of the statute, the answer is no.

I.

The relevant facts of this case are undisputed. Curtis and Stacy Marks moved from Minnesota to Florida in 1999, at which time they became domiciliaries of Florida. The Markses, however, maintained a house in Minnesota and spent a portion of every year here. The Markses remained domiciliaries of Florida until July 31, 2007, when they decided to reestablish their domicile in Minnesota. Up to that date, the Markses were not Minnesota residents for income-tax purposes. They had spent only 104 days in Minnesota in 2007, well short of the 183 days necessary to qualify as a non-domiciliary "resident" under Minnesota's tax laws. *See* Minn. Stat. § 290.01, subd. 7(b).

On the following day, August 1, 2007, their legal status changed. The Markses *immediately* became "resident[s]" of Minnesota when they changed their domicile to Minnesota. *See* Minn. Stat. § 290.01, subds. 1, 7(a) (2014) (defining "resident" under the tax laws as an individual domiciled in Minnesota, regardless of the number of days spent in Minnesota). Thus, when the Markses filed their 2007 Minnesota income-tax return, they reported their income and tax liability based on the part-year resident status that had resulted from their change of domicile. Despite the fact that the Markses were domiciled

in Minnesota for only part of the year, the Commissioner assessed the Markses for income taxes for the full calendar year, reasoning that the Markses "spent at least 183 days in Minnesota and maintained an abode in Minnesota for the full year." The tax court disagreed with the Commissioner's view, concluding that the Markses "were . . . part-year domiciliary residents to whom the [income-tax] allocation rules of Minn. Stat. § 290.17 apply." Our task is to determine which of these competing views is correct.

II.

Before delving into the specific legal dispute between the parties, an explanation of the relevant terminology and the broader statutory scheme will clarify the analysis. Specifically, this case, and the statute on which it turns, involves the differences between the two types of residents recognized by Minnesota's tax laws: a domiciled resident and a non-domiciled resident.

A.

Minnesota's tax laws define "resident" by reference to the concept of "domicile." Minn. Stat. § 290.01, subd. 7 (2014). Residence and domicile are related, but distinct, concepts. Residence depends on physical presence. *See Sanchez v. Comm'r of Revenue*, 770 N.W.2d 523, 526 (Minn. 2009); *State ex rel. Bd. of Christian Serv. of Lutheran Minn. Conference v. Sch. Bd. of Consol. Sch. Dist. No. 3*, 206 Minn. 63, 65-66, 287 N.W. 625, 626 (1939). Establishing a domicile requires a person to have the intent to make a particular place his or her permanent home in addition to being physically present there. *See Miller's Estate v. Comm'r of Taxation*, 240 Minn. 18, 19, 59 N.W.2d 925, 926 (1953). As we have explained, "[d]omicile is the union of residence and intention, and residence

without intention, or intention without residence, is of no avail." *Davidner v. Davidner*, 304 Minn. 491, 493, 232 N.W.2d 5, 7 (1975). A person can be a resident of multiple states based on physical presence, but a domiciliary of only one. *Sanchez*, 770 N.W.2d at 526. The statute governing this appeal recognizes this distinction. Minn. Stat. § 290.01, subd. 7(a)-(b); *Dreyling v. Comm'r of Revenue*, 711 N.W.2d 491, 494 (Minn. 2006) (discussing Minn. Stat. § 290.01, subd. 7, and acknowledging that a person can live in another state "for a period of time" without affecting Minnesota domicile).

### B.

Minnesota's tax statutes combine these two concepts, residence and domicile, into a single broad category of individuals: taxable "resident[s]," whose income is subject to taxation by Minnesota for the entire taxable year. *See* Minn. Stat. § 290.014, subd. 1 (2014) (declaring that "the net income of a resident individual" is subject to Minnesota tax). There are two types of "resident[s]" under Minnesota's tax laws. The first type, which I will refer to as "domiciled residents," includes any individual who is "domiciled in Minnesota." Minn. Stat. § 290.01, subd. 7(a). The second type, which I will refer to as "non-domiciled residents," includes "any individual domiciled outside the state who maintains a place of abode in the state and spends in the aggregate more than one-half of the tax year in Minnesota."

[1] *Id.*, subd. 7(b). Only individuals who fall into one of these two categories have their

---

[1]    Excluded from this group are any individuals or spouses of individuals "in the armed forces of the United States" and any individuals "covered under the reciprocity provisions" of the tax laws. Minn. Stat. § 290.01, subd. 7(b)(1)-(2). Neither exclusion is relevant in this case.

annual income fully subject to Minnesota income taxes.

Based on the definition of "resident" in the tax statutes, individuals in two other categories are also subject to Minnesota income taxes, but only for income allocable to Minnesota. A "nonresident individual[]," who by the very use of this term is neither a domiciled resident nor a non-domiciled resident, is subject to Minnesota income tax only "to the extent that" his or her income is earned in Minnesota. Minn. Stat. § 290.17 subds. 1, 2(a)(1) (2014). The other category of individuals, part-year residents,[2] is mentioned, but not defined, in the tax statutes. *See, e.g.*, *id.*, subd. 1(c) (2014) (providing a formula for allocating income to Minnesota for individuals who are "resident[s] for only part of a taxable year" and who have earned money from distributive shares). Logically, a part-year resident is an individual who qualifies as a domiciled resident for part—that is, some, but not all—of the taxable year.

## III.

With this background in mind, I turn now to the statutory question in this case, which is whether the tax laws treat the Markses as full-year or part-year residents of Minnesota. The Commissioner assessed the Markses with a deficiency of $650,789.38 based on her belief that the Markses were full-year "resident[s]" of Minnesota whose entire

---

[2] Part-year resident is a commonly used phrase in tax law to describe individuals like the Markses who change their domicile during the course of a taxable year, making them a part-year resident of two or more states. *See, e.g.*, *Sanchez*, 770 N.W.2d at 525-26 (discussing "part-year resident[]" status in Minnesota); *see also Suglove v. Okla. Tax Comm'n*, 605 P.2d 1315, 1320 (Okla. 1979) (stating that, "absent contrary indications," individuals "moving to another state" are "*routinely* taxed as part-year residents" (emphasis added)).

annual income was subject to Minnesota income taxes in 2007. The Markses, on the other hand, argue that they do not owe any additional taxes because they were part-year residents of Minnesota in 2007—a conclusion with which the tax court agreed—whose income was subject to the allocation formulas of Minn. Stat. § 290.17 (2014). The resolution of this dispute presents an issue of statutory interpretation that we review de novo. *See Hutchinson Tech., Inc. v. Comm'r of Revenue*, 698 N.W.2d 1, 6 (Minn. 2005).

### A.

As explained above, the tax laws create two types of taxable "resident[s]." The first type, a domiciled resident, requires only that an individual be "domiciled in Minnesota." Minn. Stat. § 290.01, subd. 7(a). In this case, it is undisputed that the Markses changed their domicile from Florida to Minnesota on August 1, 2007, and the legal consequence of this decision was that the Markses became taxable "resident[s]" of Minnesota beginning on that date. Accordingly, based exclusively on the definition of "resident" in Minn. Stat. § 290.01, subd. 7(a), the Markses were part-year residents of Minnesota beginning on August 1, 2007.

The dispute in this case, however, focuses on the second type of taxable resident: the non-domiciled resident. To qualify as a non-domiciled resident, an individual must satisfy three requirements. First, the individual must be "domiciled outside the state." *Id.*, subd. 7(b). Second, the individual must "maintain[] a place of abode in the state." *Id.* Third, the individual must "spend[] in the aggregate more than one-half of the tax year in Minnesota." *Id.*

There is no dispute that, on all days in 2007, the Markses maintained an abode in

Minnesota. However, the parties disagree about whether days spent in Minnesota before the August 1 domicile change can be combined with days spent in Minnesota after the August 1 domicile change in order to tax the Markses as full-year residents who spent "in the aggregate" more than half of 2007 in Minnesota. The court, once it holds that the statutory definition of "resident" is ambiguous, relies on claims about legislative intent and an administrative rule to conclude that the statute requires consideration of *all* days in which the Markses were present in Minnesota to determine whether they spent "in the aggregate more than one-half of the tax year in Minnesota." *Id*. The statute itself repudiates the court's interpretation.

The two definitions of taxable "resident" are independent and mutually exclusive of one another. An individual simply cannot be both a domiciliary and a non-domiciliary at the same time, which means that only one definition or the other applies at any given time. *Compare* Minn. Stat. § 290.01, subd. 7(a) ("The term 'resident' means any individual domiciled in Minnesota . . . ."), *with id.*, subd. 7(b) (" 'Resident' also means any individual domiciled outside the state . . . ."). By counting the days the Markses spent in Minnesota after they became domiciliaries in order to determine whether the Markses can be taxed as non-domiciliary residents, the court ignores the first statutory requirement for a non-domiciliary resident: the individual must "be domiciled outside the state" in order for the number of days spent in Minnesota to count. Stated differently, according to the plain words of the statute, only a non-domiciliary must count the number of days spent in Minnesota to determine if he or she is a "resident" of Minnesota.

Two features of Minn. Stat. § 290.01, subd. 7(b), lead me to this conclusion. First,

the statute contains the conjunctive "and" between the day-count requirement and the two other statutory requirements. *See id.*, subd. 7(b) (" 'Resident' also means any individual domiciled outside the state who maintains a place of abode within the state *and* spends in the aggregate more than one-half of the tax year in Minnesota." (emphasis added)). The use of "and" without any textual indication that a taxpayer can meet the requirements separately suggests that all three requirements for non-domiciled-resident status must be satisfied simultaneously. *See Lennartson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 662 N.W.2d 125, 130-31 (Minn. 2003) (discussing the use of a conjunctive in statutory interpretation). Moreover, under the rules of grammar, the phrase "more than one-half of the tax year in Minnesota" is a restrictive modifier of "individual domiciled outside the state," which further suggests that both conditions must be met at the same time. *See Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010) ("Statutory words and phrases must be construed according to the rules of grammar and common usage.").

Even aside from the statute's plain and unambiguous text, it is quite unusual to read a sequential list of three requirements as permitting piecemeal compliance over time without an indication from the Legislature that it had contemplated such a possibility. *Cf. Wallace v. Comm'r of Taxation*, 289 Minn. 220, 230, 184 N.W.2d 588, 593-94 (1971) (prohibiting courts from supplying "that which the legislature purposely omits or inadvertently overlooks"). In fact, the court's argument that the statute is "temporal[ly] ambigu[ous]" is incorrect because the tenses of the verbs in the statute reveal the temporal relationship among the three requirements for non-domiciliary resident status. *See State v. Schmid*, 859 N.W.2d 816, 820 (Minn. 2015) (stating that the "legislature's 'use of a verb

tense is significant in construing statutes' " (quoting *United States v. Wilson*, 503 U.S. 329, 333 (1992)); *see also United States v. Wilson*, 503 U.S. 329, 333 (1992) (noting that, in statutory interpretation, the use of past-perfect and present-perfect verb tenses can indicate that the condition identified must occur after some other event rather than occur simultaneously). This is not a statute that requires an individual to perform certain steps in chronological order. Rather, the only reasonable reading of the statute is that the three requirements must be satisfied simultaneously.

It is undisputed that at *no* point during the year did the Markses satisfy all three requirements for non-domiciled-resident status at the same time. On July 31, 2007, when the Markses were "domiciled outside the state," they had spent only 104 days in Minnesota. On August 1, 2007, the date on which they became Minnesota domiciliaries, they no longer met the requirement of being "domiciled outside the state." Therefore, under the independent and mutually exclusive definitions of "resident" in Minn. Stat. § 290.01, subd. 7, the tax court correctly concluded that the Commissioner erred as a matter of law in treating the Markses as full-year residents of Minnesota in 2007.

## B.

The court reaches the contrary conclusion, but it does so only after answering a different question first. The question is not *what* income Minnesota may tax, as the court appears to believe, but rather *how* to classify the Markses. It is only after the court deals with other questions that it considers whether the Markses are part-year or full-year residents of Minnesota. The court's backwards analysis leads it to mix and match various classifications of taxpayers—residents, non-residents, and part-year residents—in a

D-6

manner that fails to harmonize the various provisions of chapter 290.

Rather than recognizing the requirement that an individual must be domiciled outside of the state for the day count to matter, the court essentially adds a day-count requirement to the definition of domiciled residents in order to allow the Commissioner to count and combine days that a taxpayer spends in Minnesota as both a domiciled resident and as a non-resident. In other words, the court mixes and matches elements from both resident definitions to transform what would otherwise be part-year residents into full-year residents. There is nothing in either definition of "resident" that permits such elasticity.[3] Indeed, there is no need to interpret the definition of "resident" elastically at all because the statute already provides guidance on how to tax those individuals who change their domicile during the year. *See* Minn. Stat. § 290.17, subds. 1-2 (providing allocation rules).

The court compounds its error by giving an unnatural reading to the day-count interpretive provision, which states that "presence within the state for any part of a calendar day constitutes a day spent in the state." Minn. Stat. § 290.01, subd. 7(b). The only

---

[3] There is no need to consider the Commissioner's administrative interpretation in Minn. R. 8001.0300 because I would conclude that the statute is unambiguous and that the administrative rule conflicts with the statute. *See Billion v. Comm'r of Revenue*, 827 N.W.2d 773, 781 (Minn. 2013) (explaining that an administrative rule that conflicts with a statute is "invalid"). To the extent that the court relies on the Commissioner's administrative rule to support its mixed-and-matched interpretation of residency, the court's approach is at odds with the rule preventing the Commissioner from doing exactly what she did here: using an administrative rule to expand a legislative decision on the law of residency. *See Wallace*, 289 Minn. at 231, 184 N.W.2d at 594 ("It is well established that the legislature may confer discretion on the commissioner in the execution or administration of the law. It may not give him authority to determine what the law shall be or to supply a substantive provision of the law which he thinks the legislature should have included in the first place.").

reasonable reading of this provision is that it says that a taxpayer must count a part of one day spent in Minnesota as a full calendar day when considering whether he or she spent "in the aggregate" more than one-half of the calendar year in the state. *Id.* However, the court ascribes independent significance to this provision, declaring that it does not say that "days spent in Minnesota must be spent as nondomiciliaries to be counted." The court's description is true as far as it goes, but the reason the provision does not address how to count days for domiciliaries is that there is *no* day-count requirement for domiciliaries. After all, domiciled residents are automatically residents for tax purposes once they establish Minnesota as their domicile, regardless of the number of days they have spent in Minnesota.

The court's interpretation of the statute also ostensibly limits, if not eliminates, part-year-resident status for many eligible taxpayers. Consider the common example of an individual who moves to Minnesota before July 1 of a given year. As is often the case, the individual buys or rents an "abode" prior to arriving in the state and establishes Minnesota as his or her new domicile upon arrival. Under the court's analysis, the Commissioner of Revenue can treat the taxpayer as a full-year resident of Minnesota, even if the taxpayer had no contact with Minnesota prior to buying or renting the abode. Indeed, all three requirements for non-domiciled-resident status will have been met: (1) the individual was domiciled outside of Minnesota for part of the year; (2) the individual "maintain[ed] a place of abode" in Minnesota as a non-domiciliary; and (3) the individual spent more than one-half the year, or 183 days, in Minnesota. *See* Minn. Stat. § 290.01, subd. 7(b). Such an outcome could hardly have been what the Legislature had in mind when it enacted Minn.

Stat. § 290.01, subd. 7.

One can reasonably disagree with the Legislature's policy decision to carve out two specific, mutually exclusive definitions of "resident." One can even take the position that the statute *should have* allowed Minnesota to tax the Markses as full-year residents in 2007. But that is not what the statute says. When the parties identify a policy result that they prefer, their remedy is to ask the Legislature to amend the statute. As we have stated, if a statute "needs revision in order to make it embody a more sound public policy, the Legislature, not the judiciary, must be the reviser." *Axelberg v. Comm'r of Pub. Safety*, 848 N.W.2d 206, 213 (Minn. 2014).

For these reasons, I respectfully dissent.


GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Stras.

ANDERSON, Justice (dissenting).

I join in the dissent of Justice Stras.